**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles WHITNEY,
Defendant–Appellant.**

No. 79–1378.

United States Court of Appeals,
Ninth Circuit.

Submitted May 5, 1980.

Decided Dec. 9, 1980.

David S. Teske, Federal Public Defender, Portland, Or., for defendant–appellant.

Ronald H. Hoevet, Asst. U. S. Atty., Portland, Or., for plaintiff–appellee.

Before BROWNING and ANDERSON, Circuit Judges, and BATTIN,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Following a jury trial, Charles E. Whitney was pronounced guilty of possession of heroin with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841(a)(1).

Much of the government's case rested on evidence acquired during searches conducted pursuant to two warrants issued by The Honorable Joseph Ceniceros, District Judge for Multnomah County, Oregon. Both warrants were issued upon the affidavits of Portland police officer William E. Johnston, whose allegations of criminal activity were based upon information relayed to him by an undisclosed informant. Whitney contends on appeal that the convictions should

be reversed because (1) the affidavits in support of the search warrants lacked sufficient indicia of the informant's reliability; (2) one of the warrants failed to describe the place to be searched with sufficient particularity; (3) the execution of both warrants violated 18 U.S.C. § 3109; and (4) the district court erred in denying his motion to reveal the identity of the informant. After carefully considering the underlying facts and the arguments presented by counsel, we conclude that the convictions must stand.

Before analyzing appellant's contentions, we think it is advisable to summarize the facts. Since most of Whitney's arguments directly involve Officer Johnston's affidavits, we begin there.

The affidavits involved in this case were executed on October 3, 1978, and contain the information that follows. Officers Johnston and Parks had been in contact with a confidential informant within the last 48 hours.[1] During the past year, the informant had furnished them with considerable amounts of specific information regarding narcotics dealers and their modes of operation, including the storage and transportation of narcotics. Some of the information merely corroborated facts already known by the officers, but all of the information had proved to be accurate in every respect. Because the informant was a former heroin user, the officers believed him to be knowledgeable about narcotics trafficking. The informant had been inside the residence located on S.W. 64th within the last 48 hours. While there, he had observed Whitney in possession of heroin. The informant had also observed Whitney in possession of a handgun. Finally, Officer Johnston stated in the affidavit that he knew that Whitney had been convicted for smuggling marijuana, and arrested numerous times for possession and sale of heroin. Based on the information contained in the

---

* The Honorable James F. Battin, Chief Judge, United States District Court for the District of Montana, sitting by designation.

1. The searches involved in this case were executed jointly by Drug Enforcement Administration agents and officers of the Portland Police Bureau, Narcotics Division. For simplicity, we have chosen to refer to the participating members of both groups as "officers."

affidavit, the search warrant for the S.W. 64th residence was issued.

Seeking another warrant for a residence located at 5025 N. Maryland, Johnston submitted a similar affidavit. In addition to the information contained in the other affidavit; it stated that the informant had been inside the residence on numerous occasions and that it was used by Whitney as a storage and cutting house for heroin. Again, it was stated that Whitney was in possession of a handgun. The residence was described as a two–story, single–family dwelling, being wood–framed and green in color, and located on the west side of N. Maryland, with the front door facing east. Based on this affidavit, the warrant for the N. Maryland residence was issued.

In the evening of the same day, both warrants were executed. The warrant for the S.W. 64th residence was executed first. After officers were positioned at the front and rear entrances, Officer Johnston announced their authority and purpose for being there. Within seconds, the officers made a forcible entry into the house.

Whitney's wife and his eleven–year–old daughter were present, but Whitney was not. The search of the premises resulted in the discovery of fifteen grams of heroin contained inside a camera, four grams of heroin in a jar of LeTolanol hair cream, two packages of balloons (commonly used for packaging heroin), a .22 caliber Derringer pistol, a box of .22 cartridges, and a piece of notebook paper containing the following message: "I owe Chuck two bags totalling $400 bought on Friday eve. Lin Tilton." Additionally, his wife informed the officers that Whitney could be found at the 5025 N. Maryland residence and she described the car he would be driving.

Upon arriving at the N. Maryland address to execute the second warrant, the officers found a car meeting the description provided by Whitney's wife. Officer Parks knocked on the door and Officer Johnston announced their authority and purpose.

Again, within moments of the announcement, forcible entry into the residence was made.

Once entry into the building was made, the officers found themselves in an entry vestibule. To the left was a doorless stairway leading upstairs and directly ahead was a doorway leading into the lower living area. The record indicates that the officers split up and both levels were searched.[2]

The officers entered the upper apartment through an open door. Whitney was there arrested and the apartment searched. Various items were discovered, including a Seal–A–Meal food packager, measuring spoons, scissors, packaging material, a coffee grinder, and a man's purse containing I.D. cards bearing Whitney's name.

Upon entering the lower–level apartment, the officers found Mr. Williams with three of his guests. The search of Williams' apartment resulted in the discovery of approximately twelve grams of heroin which were concealed inside a jar of LeTolanol hair cream.

### I.

### *Reliability of the Informant*

█ Whitney argues that the district court erred in denying his motion to suppress the evidence on the grounds that the supporting affidavits failed to set forth sufficient indicia of the informant's credibility. The well–established standard for judging the sufficiency of affidavits based on hearsay information provided by an informant is the two–pronged test enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and the refinements added by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. First, the affidavit must inform the magistrate of some of the underlying circumstances that indicate that the informant's information is reliable. Second, it must inform the magistrate of some of the underlying circumstances from which the officer concluded

---

**2.** The house at 5025 N. Maryland was leased from Jim Spano to Ronald Williams. The house had been converted into two apart-ments–one on each level. Williams resided in the lower level and had sublet the upper apartment to Whitney.

that the informant, whose identity need not be disclosed, was credible. *Aguilar, supra,* 378 U.S. at 114, 84 S.Ct. at 1514; *United States v. Lefkowitz,* 618 F.2d 1313, 1316 (9th Cir. 1980). If either prong of the test is not met, probable cause may still be established through corroborating information from independent sources. *Spinelli, supra,* at 393 U.S. 415, 89 S.Ct. 588; *United States v. Fluker,* 543 F.2d 709, 714 (9th Cir. 1976).

■■ The *Aguilar* test does not focus on the reliability of the affiant. A magistrate is not expected to doubt the officer's statement. Rather, the test demands that a neutral magistrate evaluate the facts and circumstances contained in the affidavit and make a determination based on them as to whether or not probable cause exists. Probable cause exists when the information before the magistrate establishes the probability—not a prima facie showing—of criminal activity. *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964).

Whitney attacks the affidavits by arguing that the statements are conclusory and fail to provide specific information concerning the prior police contacts with the informant and the quantum of reliable information which was derived from those contacts. However, Whitney has cited no authority requiring such specificity. To the contrary, the Supreme Court has stated:

> "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."

*United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). *See also United States v. Moore,* 522 F.2d 1068, 1073 (9th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976).

Viewed in this way, we cannot say that the affidavits were insufficient. They recited the fact that the informant had provided a considerable amount of accurate information in the past. That information concerned narcotics and narcotics trafficking, as did the information in this case. The informant's experience involving the use of heroin lends credence to the accuracy of his observations. In upholding the sufficiency of the affidavit under attack in *Moore, supra,* 522 F.2d 1068, this court stated that it "establishes that the informer had given reliable information in the past and that his reports to FBI agents were based either on his personal observations or his personal purchases from the conspirators. These showings satisfy the twin tests of *Aguilar v. Texas.*" (citation omitted) *Id.* at 1073.

■ A magistrate's determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States,* 362 U.S. 257, 270–71, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); *Fluker, supra,* 543 F.2d at 713. We find that the search warrant affidavits set forth sufficient indicia of the informant's credibility so as to enable a magistrate to exercise independent judgment in ascertaining the existence of probable cause. Therefore, the district court properly denied Whitney's motion to suppress the evidence on those grounds.

## II.

### Description of Place Searched

Whitney's second contention is that the court below erred in denying his motion to suppress the evidence seized from the N. Maryland residence because the warrant failed to describe with sufficient particularity the place to be searched. Before discussing the real substance of Whitney's contention, we take this opportunity to address the government's position that Whitney lacked "standing" to challenge the search.

■ Much of the controversy involved in this case centers around the "automatic standing" rule for persons charged with

possessory offenses, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and its continued vitality in light of subsequent decisions. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d .208 (1973); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Subsequent to the submission of this case on appeal, the automatic standing approach of *Jones* was overruled. *United States v. Salvucci,* —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In fact, the type of standing requirement discussed in *Jones* is now analyzed under substantive fourth amendment doctrine, rather than under the procedural standing rubric. *Rakas, supra,* 439 U.S. at 138–140, 99 S.Ct. at 428. Viewed in this way, the bottom line is that, " . . . an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.' " *Salvucci, supra,* —— U.S. at ——, 100 S.Ct. at 2553, 65 L.Ed.2d at 628.

■ Since the question of whether Whitney can challenge the searches here involved is not a threshold jurisdictional question, we find it unnecessary to make that determination. This is so because even if he had a legitimate expectation of privacy in both apartments searched at the N. Maryland residence, we cannot conclude that the warrant is constitutionally invalid.

Whitney argues that the warrant was insufficient because it described the house as a "single family dwelling," when, in reality, it was composed of two separate apartments. Moreover, he alleges that the officers involved were aware of this arrangement and, therefore, their failure to reveal this to the magistrate was an intentional act of deception. Whitney claims that this deception prevented the magistrate from requiring the necessary information for determining probable cause to search the lower apartment. These allegations are unsupported by the record and are without merit.

■ Whitney has framed this contention as one involving the constitutional requirement of particularity in description of the places to be searched and is thus an attack on the facial sufficiency of the warrant. This appears to be a misconception. The classic statement of the standard for testing the sufficiency of a warrant's description appears in *Steele v. United States No. 1,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), wherein the Court ·stated, "It is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Id.* at 503, 45 S.Ct. at 416. Undoubtedly, the warrant involved here meets the test. We think Whitney's challenge, properly characterized, is one of probable cause. *See United States v. Poppitt,* 227 F.Supp. 73, 76 (D.Del.1964). As the court recognized in *United States v. Hinton,* 219 F.2d 324 (7th Cir. 1955), " . . . the scope of the warrant to search is dependent upon the extent of the showing of probable cause. The command to search can never include more than is covered by the showing of probable cause to search." *Id.* at 325.

■ Therefore, when the structure under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched. *Hinton, supra,* 219 F.2d at 326. The general rule in such instances is that, "a warrant which describes an entire building when cause is shown for searching only one apartment is void." *Id.* The rule is not without exceptions. As the Court noted in *Hinton,* the general rule would not apply if "the entire building is actually being used as a single unit." *Id.*[3]

■ The court below upheld the warrant, finding that even though the N. Maryland residence was later discovered to be

---

**3.** For a list of the exceptions and a collection of cases, *see* Annot., 22 A.L.R.3d 1330, 1340–47 (1967, Supp.1980). The exceptions include situations where the premises are occupied in common rather than individually, the defendant was in control of the whole premises, the entire premises are suspect, or the multiunit character of the premises is not known or apparent to the officers applying for and executing the warrant.

divided into two apartments, Whitney had full control of the house. This being so, probable cause existed for the search of the entire residence. We cannot say that the district court's finding is clearly erroneous.

The affidavit described the structure as a single unit because the officers were unaware of the existence of two separate apartments until entrance into the house was actually made. From what the informant had told them, the officers believed a search of the entire house was warranted.

We can find no evidence in the record that suggests any form of misstatement, deception, or misconduct by the officers. The informant told them that he had been in the house several times, knew its layout, and had been in all parts of the house. He informed them that Mr. Williams also resided there, but there is no evidence that the living arrangement was ever described as one involving two separate apartments. The record indicates that the informant described the arrangement as Whitney "utilizing" the upper level and Williams "utilizing" the lower level. We cannot say that either the informant's characterization or the officers' understanding was unreasonable. Such a living arrangement is not uncommon where two individuals share a two-story rental house as tenants in common. Furthermore, at the time of the search, there was only one house number on the outside of the residence and one mailbox. The inside door leading upstairs was unmarked, as was the door leading into the lower living quarters. The informant had told the officers that Whitney "had the run of the residence," and had actually seen narcotics and narcotics paraphernalia on both levels of the house.

Affording the proper degree of deference to the magistrate's determination of probable cause, as did the district court below, we find that the warrant was sufficient.

By claiming that the officers knowingly and intentionally deceived the magistrate by concealing the dual occupancy of the N. Maryland residence, Whitney has challenged the veracity of an affidavit which is valid on its face. To do so, he must show (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Lefkowitz, supra*, 618 F.2d at 1317. Based on the discussion above, Whitney's claim falls far short of establishing the existence of intentionally or recklessly false statements, and we reject it without further comment.

### III.

#### Section 3109

Whitney next claims that the district court should have suppressed the evidence because the entries into the two houses searched violated 18 U.S.C. § 3109. Section 3109 codifies a tradition embedded in Anglo–American law and declares the reverence which the law attaches to an individual's right of privacy in his house. *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958). The section reads as follows:

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

18 U.S.C. § 3109. This proscription, however, has been limited by exceptions. It is abundantly clear that the existence of exigent circumstances may excuse total noncompliance with § 3109. *United States v. Wysong*, 528 F.2d 345, 348 (9th Cir. 1976). *See, e. g., Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Fluker*, 543 F.2d 709 (9th Cir. 1976); *United States v. Scott*, 520 F.2d 697 (9th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *United States v. Busta-*

mante–Gamez, 488 F.2d 4 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); United States v. Smith, 456 F.2d 1236 (9th Cir. 1972) (remanded on other grounds and appealed to this court, 467 F.2d 283), cert. denied, 410 U.S. 912, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973); United States v. Cisneros, 448 F.2d 298 (9th Cir. 1971); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966), cert. denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967).

The entries made in this case were preceded by announcements of the officers' authority and purpose. Whitney's claimed violation, therefore, arises from the officers' failure to wait for a refusal of admittance. This fact is significant in that it affects the degree of exigency necessary to excuse noncompliance with § 3109.

In United States v. Bustamante–Gamez, 488 F.2d 4 (9th Cir. 1973), the trial judge had found that the entry and announcement were simultaneous, and this court noted that,

> "By and large, both the cases and the literature have concentrated solely upon the 'announcement' portion of section 3109; little attention has been devoted to the issue of when 'refusal of admittance' is necessary. Such case law as there is, however, suggests that this requirement, like the rule of announcement in general, is a flexible one which is not to be applied mechanically."

Id. at 10–11. Following an excellent discussion of the interests to be served by the separate requirements of announcement and refusal, the court concluded that, ". . . 'refusal of admittance' may not be necessary when even a mild showing of exigency is made and that, in situations not involving closed or locked doors, it is relatively unimportant;" Id. at 11, and that, "It is therefore reasonable to permit entry upon announcement only, when there is some indication of exigent circumstances." Id. at 12. The clear import of the holding in Bustamante–Gamez is that only a mild indication of exigency is required to excuse noncompliance with the 'refusal of admittance' requirement of section 3109, although "more

specific inferences of exigency" are necessary when physical destruction of property is required as opposed to entry through open or unlocked doors. Id. at 12.

At the hearing on Whitney's motion to suppress, the officers testified that they did not wait for a refusal of admittance because they believed Whitney was in possession of a handgun, considered him to be "dangerous," and feared that evidence would be disposed of unless they acted quickly. The district court found that the possible destruction of evidence and the peril of bodily harm constituted exigent circumstances excusing the officers' failure to wait for a refusal of admittance. The district court's finding of exigent circumstances will not be reversed on appeal unless it is clearly erroneous. United States v. Flickinger, 573 F.2d 1349, 1357 (9th Cir.), cert. denied, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978).

This court has excused failure to await refusal of admittance where the only exigency consisted of the officers' concern that the suspect "might destroy the drugs if given adequate opportunity." Wysong, supra, 528 F.2d at 348. In that case, the federal agents waited only five to ten seconds after saying something like, "Federal Agents, open up," before entering the motel room. There was no evidence of noise or commotion in the room that would have supported a suspicion that the drugs were in the process of being destroyed. Yet, the court noted that, "On this record it would seem that the district court might be in error, as a matter of law, if it had not upheld the entry." Id. at 348.

Whitney argues that our holding in United States v. Fluker, 543 F.2d 709 (9th Cir. 1976), requires that there be some indication of suspicious activity, e. g., "sounds of running feet," which would support the officers' belief that narcotics are in the process of being destroyed. Id. at 717. Specifically, the court stated:

> "No evidence has been called to our attention which would support a suspicion that the narcotics allegedly in the apartment were in the process of being de-

stroyed; on the contrary, the informant's report was that the inhabitants were in the process of cutting the heroin and preparing it for distribution, and there was no indication that they were expecting the arrival of drug enforcement agents. Nor did any of the searching officers testify that they heard any sounds of running feet or other suspicious activity from within Young's apartment, beyond the door."

*Id.* at 717.

We think *Fluker* is distinguishable on the facts. In that case, neither an announcement of authority and purpose nor a refusal of admittance was made. Therefore, based on the reasoning of *Bustamante–Gamez, supra*, a stronger showing of exigency was required. Moreover, in addition to the absence of evidence to support their suspicion that evidence was being destroyed, the officers had been specifically informed to the contrary.

While there is authority in this circuit to support a finding of exigent circumstances based solely on the possibility that evidence will be destroyed if the officers hesitate, we find that course of action unnecessary and decline to so rule. "Ordinarily, exigency does not evolve from one single fact. Indeed, we are often confronted with a mosaic—no one part of which is itself sufficient. Our task is to review the totality of the circumstances to determine if the finding of exigency was proper." *Flickinger, supra*, 573 F.2d at 1354.

The officers had been informed that Whitney was in possession of a handgun and they considered him to be "extremely dangerous." In *United States v. Smith, supra*, 456 F.2d at 1236, we excused the forcible entry into a hotel room without an announcement of authority and purpose because " . . . the occupants of the hotel room were likely 'armed or of a violent nature.' Prior announcement was therefore excused, for 'to require it would create palpable peril to the life or limb of the arresting officers.' " *Id.* at 1236, citing *Gilbert v. United States*, 366 F.2d 923, 932 (9th Cir. 1966).

Again, Whitney directs us to *Fluker*. In that case, however, the agents acted on the mere suspicion that a person who owned a gun may have been in the defendants' apartment on the day of the search. That person even had a permit for the weapon. The court concluded that, "The mere fact that he possessed a gun cannot be said to have reasonably supported a belief that he was armed at the time of the search or that he constituted a threat to the officers' safety." *Id.* at 717.

■ Here, in stark contrast, the officers believed that Whitney was in possession of a handgun. Due to a prior felony conviction, the possession would be illegal. Whitney was the suspect and focus of the investigation, and he was known to be dangerous and of a violent nature. The search was of his own home. Certainly, it is not unreasonable to assume that any person is more likely to forcibly resist a sudden intrusion into his own home than if he is merely a visitor in another's home. As the court observed in *Bustamante–Gamez, supra*, 488 F.2d at 11, " . . . if an occupant is predisposed to resist an entry by police, a substantial delay between announcement and entry could only give him time to prepare." After considering the totality of the circumstances, we cannot say that the district court's finding of exigent circumstances was clearly erroneous.

■ Whitney argues that even if there were exigent circumstances surrounding the entry of the first residence, they were removed by the discovery and seizure of the handgun prior to the entry of the N. Maryland residence. We find this reasoning unpersuasive. In fact, the indications of exigency surrounding the entry of the second house may have been stronger. Based on the fact that he was not found at the first house, and the tip provided by his wife, the officers were reasonably certain that Whitney was in the second house. The officers' concern over the possible loss of evidence was enhanced by the informant's description of the N. Maryland residence as a cutting and storage house for heroin. They knew that Whitney primarily "utilized" the

upstairs portion of the house and therefore it would have been difficult or impossible to detect any activity that would alert the officers of an attempted escape or the destruction of evidence. Moreover, the recovery of a firearm at the first residence did not substantially reduce the peril of bodily harm. We think it unreasonable to believe that the recovery of one gun should convince the officers that Whitney would not have access to another one in the second house. The law does not require the officers to engage in a game of Russian roulette with a dangerous man.[4]

In addition, although Whitney's wife apparently cooperated with the officers, they could not be certain that an effort to notify him would not be made. The possibility of his advance knowledge of their arrival substantially aggravated the exigencies already discussed. "A suspect who realizes that he is in danger of immediate apprehension is clearly more likely to destroy evidence, to attempt an escape, or to engage in armed resistance than is a suspect who is taken unawares." *Flickinger, supra,* 573 F.2d at 1355. We affirm the denial of Whitney's motion to suppress.

### IV.

### *Informant's Identity*

As his final assignment of error, Whitney argues that the district court should have granted the motion to reveal the informant's identity. The test for determining whether an informant's identity should be revealed has been set forth in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The test established by *Roviaro* is a balancing test, which, while recognizing the government's legitimate interest in protecting the confidentiality of an informant because disclosure of identity frequently terminates an informant's usefulness, nonetheless requires a balancing of the "public interest in protecting the flow of information against the individual's right to prepare his defense."

*Id.* at 62, 77 S.Ct. at 628. If the identity of an informant is relevant and helpful to the defense, or is essential to a fair determination of the case, the right of the government to withhold an informant's identity must give way. *Id.* at 60–61, 77 S.Ct. at 657.

It is the burden of a defendant to demonstrate the need for disclosure. *United States v. Marshall,* 532 F.2d 1279 (9th Cir. 1976). In this case, Whitney argues that the informant was an essential witness for the reason that he is claimed to have seen appellant in possession of heroin at both the S.W. 64th St. and the N. Maryland residences, and is thus the only witness able to testify to the crime of possession. It is clear from a review of the facts, however, that the government predicated its case on the heroin seized from the camera lens and the appellant's fingerprints on the film pack next to the heroin, and not on eyewitness testimony. The extent of the informant's usefulness in this case was for the establishment of probable cause for issuance of a search warrant whereby the physical evidence was seized. Whitney's assertion that identification of the informant was somehow essential to the preparation of his defense, especially as the informant's knowledge tended to be inculpatory, simply does not bear scrutiny. The appellant has failed to show an abuse by the trial court of the discretion vested in it by *Roviaro* to withhold or reveal the identity of an informant in consideration of all facts and circumstances then known. As there has been no clear showing of abuse of discretion by the trial court, we think its decision must be affirmed.

Having addressed and rejected each assignment of error, we conclude that the convictions below must be

AFFIRMED.

---

4. We note in passing that another .22 caliber pistol was discovered at the N. Maryland residence.