835 F.2d 1153
 Jesus RAMIREZ; et al., Plaintiffs-Appellees,
v.
Jack E. WEBB; Gregory Kowalski; Michael Went; John D.
Helgeson; Michael T. Hawes; George Dahl; Robert Wallis;
Daniel Moritz; Timothy Houghtaling; Manfred Zarfl;
Gregory Bednarz; John Dam; Frank Falowksi; James Wellman
and Oscar Gonzalez, both individually and in their official
capacities as agents of the Immigration and Naturalization
Service; James Montgomery; Paul E. McKinnon; Edward
Short; Robert Wagus; Jerald D. Jondall; Emil Orsack;
Ricky Dixon; James D. Kunkle; Brian F. Munson; James F.
Gilmore; Stanley R. DeSonia; Donald C. Teeple; Stephen E.
Nusbaum; Edward T. Farley; Ronald Dowdy; Edwin W. Earl;
Charles L. Huffman; Robert J. McNamara; James J. Higgins;
Kenneth S. Harris; and Larry G. Launder in their official
capacities; The United States Immigration and
Naturalization Service, Defendants-Appellants.
 No. 86-1291.
 United States Court of Appeals,
Sixth Circuit.
 Cause Argued Sept. 21, 1987.
Decided Dec. 23, 1987.
Rehearing and Rehearing En Banc Denied March 17, 1988.
 
 Anne Vandermale Tuuk (argued), Asst. U.S. Atty., Grand Rapids, Mich., Agnes Kempker-Cloyd, Asst. U.S. Atty., Morris Deutsch, Office of Immigration Litigation, Washington, D.C., for defendants-appellants.
 Philip R. Riley (argued), Michigan Migrant Legal Assis. Project, Inc., St. Joseph, Mich., Edward F. Preston, East Lansing, Mich., Gary Gershon, Michigan Migrant Legal Assis. Project, Inc., Grand Rapids, Mich., for plaintiffs-appellees.
 Before KENNEDY and KRUPANSKY, Circuit Judges; and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Defendants, agents of the Immigration and Naturalization Service ("INS"), appeal the district court's denial of their motions for partial summary judgment on the grounds of qualified immunity. Plaintiffs contend, in this Bivens -type action, that the defendant INS agents are liable to them for damages for violation of their fourth amendment rights by authorizing or obtaining invalid search warrants directed to buildings on the Brown and Basore farms in the Western District of Michigan or by attending searches pursuant to such invalid warrants. Plaintiffs further contend that, irrespective of the validity of the warrants, some of the defendants are liable to them for illegal conduct in participating in these searches and other searches or incidents.
 
 
 2
 Defendants concede that there is an issue of fact yet to be resolved as to whether some of them were guilty of illegal conduct in executing the searches pursuant to the Brown and Basore warrants. However, all of the defendants contend that they are entitled to qualified immunity on the issue of the validity of the Brown and Basore warrants. Some of the defendants contend, supported by affidavits, that they are entitled to additional qualified immunity in that they did not participate in the alleged illegal conduct in executing these searches and other searches, or that they were not present at the other searches or incidents.[1]
 
 
 3
 The district court held, on cross-motions for summary judgment, that the search warrants were facially invalid, which the defendants should have known, and that therefore plaintiffs, and not defendants, were entitled to summary judgment on the qualified immunity issue with respect to the validity of the warrants.[2] We conclude that, whether or not the Brown and Basore warrants were facially valid, at the time they were obtained in 1980, the warrants did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). With respect to some of the defendants' contentions that they are entitled to summary judgment based on affidavits that they were not involved in the allegedly improper conduct, we conclude that the district court did not precisely decide this question and, therefore, the issue is not ripe for review.
 
 I.
 
 4
 This class action was brought on September 4, 1981, by thirty named plaintiffs in Michigan against INS agents, in both their individual and official capacities, and sought damages and injunctive relief. A preliminary injunction regarding defendants' vehicle stop procedures was granted on December 10, 1984, and upheld on appeal. Ramirez v. Webb, 599 F.Supp. 1278 (W.D.Mich.1984), aff'd, 787 F.2d 592 (1986). On May 31, 1985, the district court dismissed the claims for damages against defendants in their official capacities.
 
 
 5
 The current appeal deals primarily with the validity of the search warrants issued for the INS searches at the Basore and Brown migrant worker farm camps. These searches occurred in August of 1980. Both warrants were obtained by defendant Jack Webb. Plaintiffs do not contend that there was not probable cause for obtaining the warrants. The Brown warrant, drawn against the farm, provided for the search of "a red barn consisting of four separate levels, to wit: three levels with living accommodations plus an attic, with illegal aliens living in the third level (# 3) and attic (# 4)," for "persons and property, namely, aliens not legally in the United States, records, books, papers, and documents relating to nationality, citizenship, and/or the lack thereof, which are subject to arrest in violation of Title 8, United States Code, Section 1252(a)." Joint Appendix (JA) at 449. Neither the warrant nor the supporting affidavit named the persons the defendants were searching for or described them other than "hispanic-type males" who "spoke no English" or "between 25 and 30 undocumented aliens ... living on the above described property on the third and fourth floors." JA at 449-52. The search was attended by six defendants and sixteen undocumented aliens were apprehended. The Brown plaintiffs in this appeal are United States citizens or lawful permanent residents of Hispanic descent who lived in an apartment or separate living unit located on the third floor of the barn. The district court held that the Brown warrant was invalid as a matter of law, which defendants should have known, because it did not describe with particularity the place to be searched and the persons to be searched for. Therefore, the district court held that the defendants who authorized or procured the warrant, or participated in this search, were not entitled to dismissal or partial summary judgment based on qualified immunity on the issue of the validity of the warrant.
 
 
 6
 The Basore warrant, also drawn against the farm and not against individual undocumented aliens, provided for the search of "(1) a one-story green metal barracks-type building, (2) a one-story white cafeteria-type building." JA at 453. The description of the persons to be searched for and the property to be searched for and seized was much like in the Brown warrant. The supporting affidavit described "numerous young males of Hispanic descent" and "more than thirty illegal aliens." JA at 455. Nineteen defendants participated in the Basore search. Eighteen undocumented aliens and various counterfeit documents were seized. The Basore plaintiffs with whom this appeal is concerned are all American citizens who lived in the dormitory described in the warrant. The district court likewise ruled that the Basore warrant was invalid as a matter of law, which defendants should have known, for its failure to describe more particularly the persons to be searched for. Therefore, the defendants who authorized or obtained the warrant or attended the search were not entitled to dismissal or partial summary judgment on the basis of qualified immunity on the issue of the validity of the warrant.
 
 
 7
 The district court, for the same reasons that it denied the defendants' motions, granted the plaintiffs' motion for partial summary judgment with respect to the Brown and Basore warrants. The court reaffirmed these decisions in its oral disposition of motions to reconsider, and defendants appealed.
 
 
 8
 The final issue concerns various other activities of some defendants for which they are also seeking dismissal or partial summary judgment based on qualified immunity. These defendants claim that, as shown by affidavits, they have no knowledge of and took no part in the allegedly illegal acts. Although the district court considered that it had decided these claims, we conclude that it actually did not since the affidavits in support of the claims were not addressed by the court.
 
 II.
 
 9
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court established that officials are denied qualified immunity only when their alleged acts violate "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). Accordingly, defendant INS agents have qualified immunity unless plaintiffs' "rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." Dominque v. Telb, 831 F.2d 673, 676 (6th Cir.1987). Harlow and its progeny are to be applied retroactively. Wolfel v. Sanborn, 691 F.2d 270, 272 (6th Cir.1982).
 
 
 10
 Since we conclude that these warrants were not invalid under clearly established constitutional or statutory law when the warrants were issued in 1980 (or even under such law at the present time), defendants are entitled to summary judgment on the grounds of qualified immunity on the issue of the validity of the warrants. Therefore, we do not decide the question of whether, assuming that the warrants violated established rights, the defendants should have known this. See Anderson, 107 S.Ct. at 3039. The issue of qualified immunity is an essentially legal question. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). As such, no deference is due to the trial judge, and we may resolve the issue. Dominque, 831 F.2d at 677.
 
 
 11
 A. Specificity as to place to be searched (Brown warrant)
 
 
 12
 It is undisputed that the third floor of the barn at the Brown farm was actually divided into separate living quarters. The district court concluded, from the statement in the affidavit that defendant Webb, who obtained the warrant, had on prior occasions arrested aliens on the "described property" or taken aliens to the "described property" to recover their belongings, that Webb knew that the third floor of the barn was divided into living units. Therefore, the district court held that the Brown warrant was invalid because it failed to sufficiently describe the place to be searched. See United States v. Votteller, 544 F.2d 1355, 1363 (6th Cir.1976) (quoting United States v. Hinton, 219 F.2d 324, 326 (7th Cir.1955)) (" 'Federal courts have consistently held that the Fourth Amendment's requirement that a specific "place" be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void.' ").
 
 
 13
 While we question the logic of the district court's conclusion regarding Webb's knowledge,[3] we assume for present purposes that it was a permissible one. We conclude that, even if Webb did have such knowledge, the warrant was not invalid because the entire premises were suspect and there was probable cause to search all of the units on the third floor for the unnamed, undocumented aliens. We find the analysis by the court in United States v. Whitney, 633 F.2d 902 (9th Cir.1980), cert. denied, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981), to be instructive:
 
 
 14
 Whitney has framed this contention as one involving the constitutional requirement of particularity in description of the places to be searched and is thus an attack on the facial sufficiency of the warrant. This appears to be a misconception. The classic statement of the standard for testing the sufficiency of a warrant's description appears in Steele v. United States No. 1, 267 U.S. 498 [45 S.Ct. 414, 69 L.Ed. 757] (1925), wherein the Court stated, "It is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Id. at 503 [45 S.Ct. at 416]. Undoubtedly, the warrant involved here meets the test. We think Whitney's challenge, properly characterized, is one of probable cause. As the court recognized in United States v. Hinton, 219 F.2d 324 (7th Cir.1955), "... the scope of the warrant to search is dependent upon the extent of the showing of probable cause. The command to search can never include more than is covered by the showing of probable cause to search." Id. at 325.
 
 
 15
 633 F.2d at 907 (citations omitted). So here, the question is not whether the description of the property to be searched was sufficiently definite but, rather, whether there was probable cause to search the entire third floor of the barn, whether or not it was divided into separate living units. Probable cause to search the entire third floor is not an issue on appeal, and in any event was certainly present here. Accordingly, we conclude that the issuance and execution of the Brown farm warrant did not violate constitutional or statutory rights clearly established in 1980, even though the warrant did not describe the specific living unit or units to be searched.
 
 
 16
 B. Specificity as to persons to be searched for (Brown and Basore warrants)
 
 
 17
 The fourth amendment requirement of particularity in describing the persons to be searched for and searched and the things to be searched for and seized makes general searches under warrants illegal. Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The district court, applying this general principle, held that both the Brown and Basore warrants were facially invalid because they insufficiently specified the persons to be searched for. We hold, on the contrary, that the law was not clear in 1980 and is not clear now as to whether an INS warrant to search for undocumented aliens under these circumstances must identify the aliens by name or description. Accordingly, the agents authorizing, obtaining, and executing the warrants are entitled to partial summary judgment on the grounds of qualified immunity regarding the warrants' lack of specificity of the persons to be searched for.
 
 
 18
 The district court found that the Brown and Basore searches were dwelling searches and not merely administrative searches, since administrative entries are "neither personal in nature nor aimed at the discovery of evidence of crime." Camara v. Municipal Court, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). Therefore, the district court rejected as inapposite the line of cases enunciating that routine administrative inspections by government agencies may be conducted pursuant to a warrant supported by less than particularized suspicion of a violation. See, e.g., Marshall v. Barlow's, Inc., 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978); Camara, 387 U.S. at 538, 87 S.Ct. at 1735. However, the Supreme Court has long recognized that the detention and deportation of illegal aliens is a "civil rather than a criminal procedure." Harisiades v. Shaughnessy, 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). The warrants in the present case were "issued to aid the agency [INS] in the enforcement of its statutory mandate, not to aid police in the enforcement of criminal laws." Blackies' House of Beef v. Castillo, 659 F.2d 1211, 1218 (D.C.Cir.1981), cert. denied, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982).
 
 
 19
 In Blackies, which involved searches for undocumented aliens who were employees in a commercial establishment, the court held that a search warrant that did not specify the persons to be searched for by name or description was a valid warrant.[4] The court stated:
 
 
 20
 It is difficult to imagine any instance in which INS agents could satisfy the District Court's requirement and obtain the names of each illegal alien employed in the nonpublic areas of a restaurant, or even physical descriptions any more particularized than those proffered to the magistrate in this instance. Since an illegal alien is essentially a fugitive outside the law, it is unlikely that his vital statistics will be on file anywhere in the United States or even that he will customarily use his real name, either in his contacts with the Government or with anyone else. Obviously he would never subject himself to more than the minimum of public scrutiny.
 
 
 21
 659 F.2d at 1225.
 
 
 22
 The Ninth Circuit recently adopted the reasoning of Blackies, finding that "[t]he requirement to 'identify the suspect(s) by name' or to provide 'enough specific identifying information to assure that the search for that person is reasonably likely to result in finding that person' imposes an unreasonable and impractical burden on the INS." International Molders' & Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 553 (9th Cir.1986). Moreover, in INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), the Supreme Court has noted that "INS officers were lawfully present pursuant ... to a warrant," id. at 217 n. 5, 104 S.Ct. at 1763 n. 5, "although neither of the search warrants identified any particular illegal aliens by name," id. at 212, 104 S.Ct. at 1760. The issue addressed by the Delgado Court, however, was whether there had been a seizure of the work force by the INS factory survey and not whether the warrant was valid.
 
 
 23
 Here, we have a probable cause search by INS agents for undocumented aliens housed in a barn provided by a commercial farm operation. In light of these considerations, including the cases discussed herein, we do not believe that a constitutional or statutory right clearly established at the time of the issuance and execution of the warrants was violated by the failure to particularly describe in the warrant the persons to be searched for. Accordingly, defendants are entitled to summary judgment on the grounds of qualified immunity on this issue.
 
 III.
 
 24
 It is contended that those defendants whose unrefuted affidavits state that they had no knowledge of and took no part in the alleged specific acts of misconduct are entitled to summary judgment as a matter of law on the grounds of qualified immunity.[5] 5] If these defendants did not participate in the actions that allegedly violated plaintiffs' rights, then they cannot be liable as a matter of law. Therefore, this court has jurisdiction to entertain this contention of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985) (the denial of qualified immunity, to the extent that it turns on an issue of law, is an immediately appealable final decision). In Mitchell, the Supreme Court recognized that a public employee defendant is entitled not to stand trial when no genuine issue of material fact exists as to whether he committed the alleged act. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." 472 U.S. at 526, 105 S.Ct. at 2816. Therefore, defendants may be entitled to summary judgment if there exists no genuine issue as to their involvement in the incidents.
 
 
 25
 Our examination of the record, however, shows that the district court did not evaluate defendants' affidavits in denying their motions for summary judgment on the grounds of qualified immunity. Accordingly, this issue is not ripe for review. It appears to us that this old case, initiated in 1981, might well be simplified if the summary judgment record could be placed in such condition that the district court can determine which defendants, if any, were not involved in the allegedly illegal conduct remaining in issue after this appeal.
 
 IV.
 
 26
 For the foregoing reasons, we REVERSE the order of the district court and REMAND the cause for further proceedings consistent with this opinion.
 
 
 
 [1]
 See infra note 5
 
 
 [2]
 Plaintiffs concede that this denial of qualified immunity was immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)
 
 
 [3]
 It is questionable whether one may reasonably infer that, because Webb had been on the Brown farm property to arrest aliens or to take them there to pick up their belongings, he would know that the third floor of the barn was divided into living units
 
 
 [4]
 We recognize that, after holding that an INS search is administrative in nature, the Blackies court upheld a search warrant that was clearly an administrative warrant rather than one obtained pursuant to Rule 41, Fed.R.Crim.P., and that Blackies seems to hold that an earlier search warrant for persons was invalid only because it was obtained pursuant to Rule 41, which the court opined could not authorize INS searches. We agree that the Brown and Basore searches were administrative. The warrants were obtained pursuant to Rule 41, which was amended after the warrants in Blackies were issued. The amendment, in effect at the time the Brown and Basore warrants were obtained, allows search warrants to issue to search for a person. The comments to the amendment state that this change "covers the arrest of a deportable alien under 8 U.S.C. Sec. 1252, whose presence at a certain place might be important evidence of criminal conduct by another person, such as harboring of undocumented aliens under 8 U.S.C. Sec. 1342(a)(3)." Thus, Blackies is not authority for the proposition that the Brown and Basore searches were illegal because they were carried out under Rule 41
 
 
 [5]
 These include three defendants who allege that they attended the Brown search but had no knowledge of and took no part in the illegal detentions and searches, sixteen defendants who claim the same regarding the Basore operation, eighteen stating the same regarding the Bil-Mar factory search, one defendant who claims no involvement at all in the Aguilar incident, one who did not actively participate in the Mireles/Zepeda incident, one claiming the same regarding the Solis incident, and one alleging that he did not participate in or authorize any of the alleged incidents