**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-30364 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00024-RSM-1 |
| v. | |
| MICHAEL A. JOHNSON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted February 6, 2012
Seattle, Washington

Before: SCHROEDER, ALARCÓN, and GOULD, Circuit Judges.

Michael A. Johnson appeals from his conviction and sentence for

(1) conspiracy to distribute fifty grams or more of actual methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (2) possession of five

grams or more of actual methamphetamine with intent to distribute, in violation of

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. §2; (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and (4) felon in possession of explosives, in violation of 18 U.S.C. §§ 842(i)(1) and 844(a). Johnson contends the district court erred in denying his motion to suppress, motion for a new trial or to arrest judgment, and motion to strike the 21 U.S.C. § 851 enhanced penalty information, as well as in limiting defense counsel's cross-examination of Charles Beedle and Detective Nicole Richardson. We affirm because we conclude that the district court did not err.

## I

Johnson challenges the district court's denial of his motion to suppress on the ground that there was not probable cause to issue the search warrant. Johnson also contends that the warrant lacked sufficient particularity and the search of his residential unit exceeded the scope of the warrant. We review a district court's denial of a motion to suppress de novo and its factual findings for clear error. *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002). We review a magistrate's finding of probable cause to issue a search warrant for clear error "and give 'great deference' to such a finding." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *United States v. Hay*, 231 F.3d 630, 634 n.4 (9th Cir. 2000)).

**A**

When reviewing a magistrate's issuance of a search warrant, we have previously explained that magistrates are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (citations omitted); *United States v. Foster*, 711 F.2d 871, 879 (9th Cir. 1983) (rejecting probable cause challenge to search warrant for residence of lieutenant in drug organization). Indeed, we have upheld search warrants against probable cause challenges based, in part, on evidence showing that members of a drug trafficking organization frequented the defendant's residence. *United States v. Garcia-Villalba*, 585 F.3d 1223, 1234 (9th Cir. 2009).

Here, the application for the search warrant for 135 South Ann Street, Monroe, Washington was supported by probable cause. Detective Corey Williams's affidavit described several incidents in which Christopher Jeter was seen with members of the Barajas Garcia organization in connection with drug trafficking. Detective Williams also identified Jeter as the primary resident of the house located at 135 South Ann. As the district court recognized, "[t]he fact that Mr. Jeter lived there . . . is sufficient at that point in time, knowing he is involved

3

in numerous instances of illegal drug dealing, for the magistrate judge to conclude that a fair probability existed that evidence . . . could be found in that particular area."  Transcript of Hearing at 124-25, *United States v. Johnson*, No. 2:10-CR-00024-RSM-1 (W.D. Wash. May 4, 2010), ECF No. 97.

Detective Williams's affidavit showed that members of the Barajas Garcia organization visited the property located at 135 South Ann on several occasions in connection with drug trafficking.  Indeed, Detective Williams described intercepted telephone calls, in which it appeared that members of the organization conducted criminal activity on the premises.  For example, during two separate intercepted telephone calls (1) Candido Hernandez told Barajas Garcia he had the "papers" (i.e., money), to call him, and that he was at the "recycling," which officers believed referred to the house at 135 South Ann; and (2) Hernandez discussed drug proceeds with Barajas Garcia, told him that he was at the "recycler," and that Barajas Garcia could come into the house when he arrived.

**B**

Johnson characterizes his challenge based on the division of the house into two separate living units as a *particularity* challenge.  Relevant case law, however, distinguishes challenges to the validity of a search warrant based on a lack of *particularity* in the description of the premises to be searched from challenges to

4

the reasonableness of law enforcement's *execution* of a search warrant. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Indeed, in *Garrison*, the United States Supreme Court described these two challenges as presenting "two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed." *Id.*

Johnson argues that the search warrant lacked sufficient particularity because it described the house on 135 South Ann as a single-family residence.

The Fourth Amendment requires that "no Warrants shall issue" except, *inter alia*, those "particularly describing the place to be searched." U.S. Const. amend. IV. We have set forth the following test for determining whether a warrant satisfies the particularity requirement:

> [W]hether the warrant describes the place to be searched with "sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort," and whether any reasonable probability exists that the officers may mistakenly search another premise.

*United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004) (quoting *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985)).

A search warrant that contains a mistake in the description of the premises to be searched is not automatically invalid. *See Garrison*, 480 U.S. at 83 n.3, 85–86

(rejecting invalidity argument despite warrant's broad description of search target as "third floor apartment" where there were two separate third floor apartments). Such a warrant may survive a particularity challenge if it describes the premises as they were known or should have been known to officers, at the time of the application for the warrant. *Id.* at 85; *see Mena v. City of Simi Valley*, 226 F.3d 1031, 1036–37 (9th Cir. 2000) (relying on *Garrison* and stating that there was no evidence that officers knew or should have known prior to the application for the search warrant that the residence was a multi-unit dwelling). Indeed, "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Garrison*, 480 U.S. at 85.

Here, the application for the search warrant and the warrant itself contained sufficient facts to satisfy the particularity requirement even though it described the house as a single-family residence because there is no evidence that officers knew or should have known that the house contained two separate residential units. From the outside, the house appeared to be a single-family residence: officers believed there was a single front door, did not know that the house was divided,

6

and had confirmed that the utilities were registered to one person, Jeter. As the district court recognized, there was no separate address.

In addition, the warrant contained a detailed description of the premises to be searched. The warrant described the location of the property. It also identified key features of the house, such as the color and type of construction of the house and the trim and siding on the house.

## C

Johnson contends that the search was overbroad because officers were required to suspend the search of his residential unit when they discovered that the house was divided into two separate apartments. "Police officers' authority to search premises that are described in a warrant is not unlimited." *Mena*, 226 F.3d at 1038. "Generally, if a structure is divided into more than one occupancy unit, probable cause must exist for each unit to be searched." *Id.* (citing *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980)).

"'If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect.'" *Id.* (quoting *United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994)). Indeed, officers are "required to discontinue the search . . . as soon as they discover[] that there [are] two separate units . . . and therefore [are] put on notice of

7

the risk that they might be in a unit erroneously included within the terms of the warrant." *Garrison*, 480 U.S. at 87.

The general rule requiring probable cause for each unit does not apply when the entire house is suspect. *See, e.g.*, *United States v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982) (stating that "general rule voiding the warrant for an undisclosed multi[-]unit structure does not apply if the defendant was in control of the whole premises or they were occupied in common, if the entire premises were suspect, or if the multi[-]unit character of the premises was not known to the officers" (citation omitted)); *Whitney*, 633 F.2d at 907 (recognizing that the rule requiring probable cause as to individual units "would not apply if 'the entire building is actually being used as a single unit'" (quoting *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955))).

Detective Williams's affidavit in support of the application for the search warrant showed that the entire house was suspect because it was used to sell and store methamphetamine. His affidavit explained that surveillance showed that members of the Barajas Garcia organization had visited the residence on several occasions and appeared to have free access to the residence. Intercepted telephone calls also revealed that a member of the organization visited the residence in

8

connection with discussing and distributing the proceeds of methamphetamine sales.

## II

Johnson contends the district court's limitation on the cross-examination of Beedle and Detective Richardson violated his rights under the Confrontation Clause. We review de novo a defendant's Confrontation Clause challenge based on the exclusion of an area of inquiry. *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007). We review for abuse of discretion a district court's limitations on the scope of questioning within a given area. *Id.*

"The Confrontation Clause of the Sixth Amendment secures a defendant's right to cross-examine government witnesses." *United States v. Adamson*, 291 F.3d 606, 612 (9th Cir. 2002). "The constitutional right to cross examine is '[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . . .'" *United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). A court, however, "cannot preclude a defendant from asking, not only '*whether* [the witness] was biased' but also 'to make a record from which to argue *why* [the witness] might have been biased.'" *Id.* (quoting *Davis*, 415 U.S. at 318 (emphasis added)).

9

## A

Johnson contends that the district court erred by limiting the scope of the cross-examination of Beedle regarding his understanding, based on sources other than his attorney, of the enhanced penalty he would have faced had he not cooperated with the Government. According to Johnson, had the district court allowed this line of questioning, he would have shown that Beedle knew that he faced a twenty-year mandatory minimum sentence under the enhanced penalty.

While the proposed line of questioning may have been relevant to show *whether* and *why* Beedle was biased, it was repetitive because Beedle had already testified repeatedly that he lacked an understanding of the precise term he would have faced under the enhanced penalty. The jury had sufficient information to assess Beedle's credibility. On direct examination, Beedle revealed he had a substance abuse problem with methamphetamine and marijuana, sold drugs, and was cooperating with the Government in hopes of receiving a reduced sentence. During defense counsel's initial cross-examination, Beedle also admitted that he had lied during direct examination, lied to agents about the identity and "back story" of the woman with whom he visited Johnson to buy drugs, lied on monthly probation reports regarding his drug use, and admitted he knew that, absent cooperation, he faced a ten-year mandatory minimum sentence on his most recent

10

drug charge.  Moreover, during further cross-examination, Beedle also admitted he knew that, had he not cooperated, he would have faced an enhanced penalty. Therefore, Johnson has failed to demonstrate that the district court abused its discretion in limiting the scope of the cross-examination of Beedle.

## B

Johnson also contends that the district court erred by limiting the scope of the cross-examination of Detective Richardson regarding her conversation with Jeter on October 20, 2009.  Johnson argues that the district court should have admitted Detective Richardson's notes into evidence because they were offered to show her state of mind, not for their truth.

Johnson has not shown that the district court abused its discretion by refusing to admit Detective Richardson's notes to show her state of mind.  Indeed, Johnson has not explained *how* exclusion of the notes limited the scope of his cross-examination of Detective Richardson regarding her state of mind.  The record shows that Johnson was not precluded from questioning Detective Richardson about Jeter.

## III

Johnson contends the district court erred when it denied his motion for new trial or to arrest judgment.  We review for abuse of discretion a district court's

11

denial of a motion for new trial or to arrest judgment. *United States v. Moses*, 496 F.3d 984, 987 (9th Cir. 2007); *United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir. 2004).

**A**

Johnson contends that the prosecutor's decision to charge him separately from the underlying conspiracy violated his right to due process by preventing him from presenting evidence supporting his theory that Jeter "set him up."

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *see, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (explaining that charging decisions are left to the discretion of the prosecutor subject to the limitation that such decisions cannot be based on "'an unjustifiable standard such as race, religion, or other arbitrary classification'" (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962))). A prosecutor *may*, but is not required to, charge two or more defendants in a single indictment if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).

Here, Johnson has not shown that the Government's decision to charge him separately from the underlying conspiracy was an improper exercise of the

prosecutor's discretion or that it denied him his due process right to a meaningful opportunity to present a complete defense. Johnson has not pointed to any evidence suggesting that the prosecutor's charging decision was motivated by bad faith or discrimination.

**B**

Johnson contends further that law enforcement mishandled the firearms found during the search of Johnson's residential unit and failed to preserve potential fingerprints. Johnson also contends that law enforcement failed to record details of the search. According to Johnson, this prevented him from presenting his defense that others, including Jeter, handled the weapons and had access to the area where the items were found.

In order for the loss or destruction of evidence to constitute a due process violation, the evidence must "[1] possess an exculpatory value that was apparent before the evidence was destroyed, and [2] be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the United States Supreme Court held that where lost or destroyed evidence is "only potentially exculpatory, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed

13

in bad faith." *United States v. Estrada*, 453 F.3d 1208, 1212 (9th Cir. 2006) (citing *Youngblood*, 488 U.S. at 58).

Here, Johnson has not shown that the potential fingerprint evidence on the weapons found during the search of his residential unit was "apparently exculpatory" nor has he shown bad faith. Johnson merely speculates that other individuals' fingerprints *may* have been found on the weapons, but has not pointed to any evidence that officers intentionally mishandled the weapons.

As for Johnson's contention that officers failed to record the details of the search, he has similarly not shown bad faith. Although somewhat unclear, Johnson suggests that the Government's failure to introduce the testimony of Special Agent Kyle Bowen, who oversaw the search, was improper. Johnson, however, has not explained how the Government's failure to call this witness lead to a denial of his due process rights nor how it demonstrates bad faith.

## C

Johnson contends that, during rebuttal argument, the Government misrepresented Beedle's testimony by stating that Beedle testified that he had purchased four ounces of methamphetamine from Johnson shortly before the search of 135 South Ann. According to Johnson, this misrepresented Beedle's

testimony, which was that he couldn't "quite remember" but thought he purchased "three to four ounces."

It is well established that "it is improper for the government to present to the jury statements or inferences it knows to be false or has very strong reason to doubt." *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009) (citing *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002)). Not all misstatements by a prosecutor during a trial, however, require reversal. *See, e.g.*, *United States v. Kojayan*, 8 F.3d 1315, 1318 (9th Cir. 1993) ("Words uttered spontaneously sometimes come out wrong; the exigencies of trial may make it hard to consider all the implications of a particular assertion. The mere fact of a misstatement to the jury therefore isn't the end of the matter."). Indeed, technical or insignificant misstatements are often disregarded. *See United States v. Hudson*, 432 F.2d 413, 414 (9th Cir. 1970) (per curiam) (rejecting defendant's contention that court should reverse his conviction because the prosecutor misstated trial testimony). In order to obtain a new trial based on a prosecutor's misstatement to the jury, the defendant must show "both misconduct and prejudice." *United States v. Wright*, 625 F.3d 583, 609-10 (9th Cir. 2010).

Here, Johnson has not shown that the prosecutor's statements during rebuttal argument constituted misconduct resulting in prejudice. There is no evidence that

15

the statement was intentionally false. Johnson has also not explained how he was prejudiced by this statement.

## IV

Johnson contends that the prosecution's decision to file a § 851 enhanced penalty information after Johnson rejected a plea offer constitutes vindictive prosecution and deprived him of due process. We review a defendant's claim of prosecutorial vindictiveness and denial of due process de novo. *United States v . Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007).

Johnson cannot rely on the filing of the § 851 enhanced penalty information following failed plea negotiations, alone, to establish actual or presumptive vindictiveness. We recently held in *United States v. Kent*, 649 F.3d 906 (9th Cir.), *cert. denied*, 132 S. Ct. 355 (2011), that "[a]s a matter of law, the filing of additional charges to make good on a plea bargaining threat . . . will not establish the requisite punitive motive . . . ." *Id.* at 914; *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363-65 (1978) (rejecting prosecutorial vindictiveness claim despite prosecutor's concession that threat of additional charges was intended to influence defendant to plead guilty).

**AFFIRMED.**