UNITED STATES of America, Plaintiff–Appellant,

v.

Ali SHAMAEIZADEH a/k/a Ali Zadeh, Brian Reed, and Joe Ford, Defendants–Appellees.

No. 94–6384.

United States Court of Appeals, Sixth Circuit.

Decided April 9, 1996.

Sean Connelly (argued and briefed), U.S. Dept. of Justice, Criminal Division, Washington, DC, for U.S.

David R. Marshall (argued and briefed), Lexington, KY, for Ali Shamaeizadeh.

Joe A. Jarrell (argued), Patrick F. Nash (argued and briefed), Lexington, KY, for Brian Reed.

Mark J. Stanziano, Somerset, KY, for Joe Ford.

Before: KENNEDY and JONES, Circuit Judges; HOLSCHUH, Chief District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Defendants Shamaeizadeh, Reed, and Ford were indicted for violations of federal drug laws in the District Court for the Eastern District of Kentucky. The sole issue on appeal is whether the district court properly invalidated a search warrant on the ground that it was not supported by probable cause. We hold that the redacted affidavit relied upon by the issuing magistrate lacked a substantial basis for establishing probable cause to search Reed and Ford's basement apartment. For this reason, we affirm the ruling of the district court.

The indictments were based in large part on evidence obtained from Reed and Ford's basement apartment pursuant to a search warrant. Before trial, each of the Defendants moved to suppress the evidence, alleging that the police had obtained the warrant only after conducting two illegal searches of Defendants' residence. The magistrate judge recommended that the district court grant the Defendants' motions. The district court adopted the magistrate's findings and redacted the evidence obtained as a result of those searches from the supporting affidavit. Subsequently, the court concluded that the redacted affidavit did not provide sufficient probable cause to support the issuance of a warrant and thereby granted the Defendants' motions. This appeal followed.

### I.

The Defendants live in a one story house with a basement at 121 Millstone Drive (hereinafter "Millstone") in Richmond, Kentucky. Defendant Shamaeizadeh occupied the upper floor with his fiancee, Theresa Schmitt. Defendants Reed and Ford occupied the basement. Each of the residents regarded the basement as Reed and Ford's distinct apartment dwelling.

At 8:34 p.m. on March 14, 1994, Schmitt called the Richmond Police Department, alleging that a burglary had taken place at Millstone. The Department immediately dispatched Officer Mark Wiles, who arrived at Millstone five minutes later. Schmitt told Wiles that she had left the back door open to allow her cats to return. After taking some muscle relaxants and drinking a beer, she passed out on the kitchen table. When she awoke, she noticed that her room key was missing from her pocket, leading her to suspect that a burglar had entered the house and taken it. Schmitt then went to her room to apply some makeup. She alleged that during this time, the burglar reentered Millstone, broke the glass top of the kitchen table, and then left. Indeed, Officer Wiles observed shattered glass all over the kitchen floor.

Fearing that the burglar might still be in the house, Schmitt asked Wiles to search the house with her. Officer Wiles first searched the upper floor. He then discovered a locked door, but did not attempt to open it because Schmitt told him that it was Shamaeizadeh's room and that he kept it locked while he was away. He also discovered a broken door which led to the basement apartment of Reed and Ford. Wiles, however, did not examine it because Schmitt told him that she had kicked it open in order to use the telephone a few days earlier. Officer Wiles later testified that during this search, he detected a "faint odor" of growing marijuana.

After searching the upper floor, Officer Wiles went through the back door, which led to a large deck overlooking the back yard. He searched the back yard. Meanwhile, Schmitt, who was still in the house, entered the lower floor apartment through the broken door. After entering the apartment, she exited through the back door of the apartment and met Officer Wiles in the backyard. She asked him to check the basement apartment. She explained to Wiles that Reed and Ford occupied the basement apartment but that they were away on spring break. Having learned that the lower floor was actually

[*] The Honorable John D. Holschuh, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

a separate residence, Officer Wiles nonetheless proceeded to search the apartment.

During the course of his search of the basement apartment, Officer Wiles noticed that it contained several rooms. Most of the doors in the apartment, however, remained locked, and he did not try to open them. Nonetheless, Wiles noticed the scent of marijuana. After finishing his walk-through of the downstairs apartment, Officer Wiles— who later admitted at the suppression hearing that he had seen less than five marijuana plants in his life and could not recognize the scent of growing marijuana—called Assistant Police Chief Wayne Grant because he believed that he would need a supervisor to assist him. Wiles and Schmitt returned to the upper floor. While awaiting Grant's arrival, Schmitt told Wiles that the "government" was the burglar, causing Wiles to discredit Schmitt's allegations.

When Grant arrived, he and Wiles conducted the second search of Millstone. They did not ask Schmitt's permission for this search. As they entered the lower floor apartment, Wiles once again detected the scent of what he suspected to be marijuana. While in the basement apartment the officers discovered small marijuana cigarette butts, or "roaches," in an ashtray. They also uncovered boxes of fluorescent bulbs underneath the apartment stairway, and noticed that fluorescent lighting in one of the locked rooms turned on and off intermittently. Because marijuana is often grown under fluorescent light, the officers suspected that the lighting was being used for that purpose. As a result, Sergeant Sam Manley and Officer Joel Cunigan, who has extensive experience and training in detecting marijuana but is not normally dispatched to investigate burglaries, were called in to offer assistance. Manley and Cunigan arrived at Millstone at about 9:20 p.m.

Grant, Manley and Cunigan conducted the third search of Millstone. This search was also conducted without Schmitt's permission. Upon entering the lower floor, Cunigan "noticed a strong odor which [he] suspected to be growing marijuana." J.A. at 218. Cunigan then discovered a hemostat, rolling papers, a plastic bag of what he suspected was

marijuana (but which was later discovered to be catnip), and a bag containing a variety of pills. After completing the third search, the officers advised Schmitt of her rights. Schmitt then told the officers that she believed Reed and Ford were growing marijuana in their apartment. She informed the officers that she had never seen the marijuana, but the scent was so strong, particularly at nighttime, that she covered her vents to avoid it. After obtaining this information from Schmitt, Cunigan called a state prosecutor and proceeded to secure a search warrant.

Cunigan submitted a sworn affidavit in support of his petition for a search warrant. The affidavit stated the following:

> On the 14th day of March 1994, at approximately 8:34, the Richmond Police Department received a call [from] Teresa Schmidt [sic] of 121 Millstone Drive, and Ms. Schmidt reported that there had been a burglary at her residence. Officer Mark Wiles responded to the alleged burglary and upon entering the residence and beginning the investigation Officer Wiles along with Sgt. Sam Manley and Asst. Chief Wayne Grant observed numerous items of drug paraphernalia, partially smoked marijuana cigarettes, [a] plastic bag containing several different types of what appeared to be prescription pills and plastic bag of what readily appeared to be suspected marijuana. At this time I was contacted and I went to the residence where I also observed the same items.
>
> While in the residence, I detected a strong odor of growing marijuana both upstairs and downstairs. Several of the rooms in the residence were locked and we were unable to look inside them.
>
> According to Schmidt, some of the other occupants of the house are growing marijuana inside the house.
>
> From under the door of one of the locked rooms, I could see a strong florescent [sic] light glow.

J.A. at 49. Relying on this affidavit, the Madison County district court judge issued a warrant for the search and seizure of "[a]ny and all illegally possessed controlled substances including marijuana, both growing

and processed, and any drug paraphernalia ..." J.A. at 50.

At 11:19 p.m., Cunigan returned to Millstone with other Richmond police officers, as well as an agent from the Drug Enforcement Agency, to execute the search warrant. After forcibly opening the locked doors in the basement apartment, they found and seized 393 marijuana plants, 17 of which were found in Reed's locked basement room, and various growing equipment. They found nothing of evidentiary significance in Ford's locked basement room. Shamaeizadeh, Reed, and Ford were subsequently arrested and indicted for federal drug law violations under 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. §§ 2 and 924(c)(1). In addition, Shamaeizadeh was charged with renting the basement apartment for the purpose of unlawfully manufacturing, storing or distributing marijuana under 21 U.S.C. § 856.

After their indictment, Defendants Reed and Ford moved to suppress the evidence seized pursuant to the March 14 warrant.[1] The magistrate found that due to "exigent circumstances," the first warrantless search was constitutional despite the fact that Schmitt "did not have the 'common authority'" to authorize a search of the basement apartment. J.A. at 132 (Magistrate's Recommendation and Report). On the other hand, the magistrate concluded that the second and third warrantless searches violated the Fourth Amendment. *Id.* at 133–134 (citing *Michigan v. Tyler*, 436 U.S. 499, 510–11, 98 S.Ct. 1942, 1950–51, 56 L.Ed.2d 486 (1978), and *Michigan v. Clifford*, 464 U.S. 287, 297, 104 S.Ct. 641, 648–49, 78 L.Ed.2d 477 (1984)). The magistrate thus recommended redacting the information which was obtained as a result of the second and third searches from Cunigan's affidavit. J.A. at 135. As a result, only the portions containing Schmitt's statement and Cunigan's detection of a strong odor of marijuana upstairs remained in the affidavit. *Id.* In turn, the magistrate found that the expurgated affidavit "provide[d] probable cause to search the upstairs portion of the residence for illegal drug activity" but failed to establish "probable cause to believe that illegal drug activity was occurring in the downstairs portion of the residence." J.A. at 136. For these reasons, the magistrate recommended that the evidence which was gathered from Millstone on the basis of the redacted information be suppressed and excluded. The district court adopted the magistrate's recommendations and ordered the evidence suppressed.

The government does not challenge the magistrate's conclusions on the constitutionality of the second and third searches or his decision to redact the information obtained as a result of those searches from the affidavit. Nor does it challenge any of the facts found by the district court. Rather, the government challenges the magistrate's determination, which was adopted by the district court, that once the affidavit was purged of the illegally obtained information, it no longer provided probable cause for the issuance of the search warrant. The government contends that the redacted affidavit provided sufficient probable cause to search both the upper and basement floors of the house, and as a result, the warrant sufficiently authorized a search of both floors. We disagree.

## II.

"'In reviewing a district court's determinations on suppression questions, a district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed *de novo*.'" *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir.), (quoting *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir.1993)), *cert. denied,* —— U.S. ——, 115 S.Ct. 481, 130 L.Ed.2d 394 (1994). We review the evidence in a light most favorable to the district court's decision. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.), *cert. denied,* 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). The standard

---

1. The district court denied Shamaeizadeh standing to participate in the motion to suppress because he had no reasonable expectation of privacy with regard to the basement floor of Millstone, where the inculpatory contraband was found.

Shamaeizadeh's Br. at 4. Shamaeizadeh appealed, and we dismissed his appeal for lack of appellate jurisdiction. *See United States v. Shamaeizadeh* [sic], 41 F.3d 266, 267 (6th Cir.1994).

**1136**

remains the same in those probable cause cases involving redacted affidavits. *Id.; U.S. v. Dozier,* 844 F.2d 701, 706 (9th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988).

■ When a trial court is presented with a redacted affidavit, it must review each portion of that affidavit so that the reviewing court may determine "whether the untainted portion of the affidavit ... sufficiently supported a finding of probable cause." *United States v. Campbell,* 878 F.2d 170, 173 (6th Cir.), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989). This principle closely resembles the "independent source rule," which we defined in *United States v. Smith,* 730 F.2d 1052, 1056 (6th Cir.1984):

> when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, "[i]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted."

*Id.* (quoting *United States v. Williams,* 633 F.2d 742, 745 (8th Cir.1980)). Thus, "[i]rrespective of the legality of the initial entry into the residence to secure the premises, we can nevertheless examine the balance of the underlying search warrant affidavit for probable cause in order to determine whether the lawfully obtained evidence was sufficient to determine that the search and seizure should be upheld." *United States v. Korman,* 614 F.2d 541, 547 (6th Cir.), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980); *see also United States v. Restrepo,* 966 F.2d 964 (5th Cir.), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 968, 122 L.Ed.2d 124 (1993). Conversely, if the lawfully obtained information remaining in a redacted affidavit does not establish probable cause, then the issuance of a warrant would not have been justified and the evidence seized pursuant to the warrant must be suppressed. *See Campbell,* 878 F.2d at 173.

**A.**

■ The probable cause standard is a " 'practical, non-technical conception.' " *Illi-*

*nois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. U.S.,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). It "has repeatedly been defined in terms of the facts and circumstances known to the officers at the time of the search." *Pasquarille,* 20 F.3d at 685 (citing U.S. v. *Nigro,* 727 F.2d 100, 103 (6th Cir.1984) (en banc)). "The test for probable cause is simply whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Padro,* 52 F.3d 120, 123 (6th Cir.1995) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332). Such a probability must be "supported by less than prima facie proof but *more than mere suspicion." United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990) (emphasis added).

■ In *Gates,* the Supreme Court delineated the duties of the issuing magistrate and the reviewing court in determining whether probable cause exists to issue a search warrant. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332–33. Abandoning the "two-pronged test" set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court held that the issuing magistrate must apply a "totality-of-the-circumstances" test to probable cause issues. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. This test requires the magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," that probable cause exists. *Id.* The reviewing court, in turn, must yield "great deference" to the issuing magistrate. *Id.* at 236, 103 S.Ct. at 2331; *United States v. Leake,* 998 F.2d 1359, 1363 (6th Cir.1993). Its role is limited to "ensur[ing] that the magistrate had a 'substantial basis' for concluding that probable cause existed." *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332.

After examining the statement of Schmitt as well as the redacted statement of Cunigan, we agree with the reviewing magistrate that the redacted affidavit does not provide a substantial basis to support the issuing mag-

istrate's finding of probable cause with respect to the basement apartment and thus affirm the district court's ruling on the motion to suppress.

## B.

In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government.[2] *Gates,* 462 U.S. at 230–32, 245, 103 S.Ct. at 2328–29, 2335–36; *Leake,* 998 F.2d at 1363. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates,* 462 U.S. at 233–34, 103 S.Ct. at 2329–30.

### 1. *Schmitt's Statement*

The government maintains that Schmitt's statement that some of the other occupants in the house were growing marijuana inside the house provides a substantial basis to issue a search warrant for the basement apartment. After examining the redacted affidavit, however, we disagree.

 It is evident from the record that Millstone was divided into two distinct dwellings. "'For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses.'" *United States v. Vottel-*

*ler,* 544 F.2d 1355, 1363 (6th Cir.1976) (quoting *United States v. Hinton,* 219 F.2d 324, 325–26 (7th Cir.1955)). As a consequence, "when the structure under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched." *United States v. Whitney,* 633 F.2d 902, 907 (9th Cir.), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). In this case, the redacted affidavit simply states that Schmitt told the officers that other occupants of the house were growing marijuana. J.A. at 49. This statement does not specifically implicate Reed and Ford's basement apartment. Thus, Schmitt's statement, standing alone, lacks the particularity needed to establish probable cause for the basement apartment. *Whitney,* 633 F.2d at 907.

### 2. *Schmitt's Reliability and Credibility*

Generally, the reliability and credibility of a witness are important factors to consider in determining whether the issuing magistrate's substantial basis finding should be upheld. *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329–30. Where, as here, the statement is insufficient on its face we need not determine reliability or credibility. Her statement, as recited in the affidavit, does not implicate Reed and Ford's basement apartment. Schmitt's reliability and credibility do not help the government because the statement itself is too vague to provide probable cause for searching the basement apartment.

### 3. *Cunigan's Statement*

The final factor which we must examine is the statement by Cunigan that he detected the odor of growing marijuana upstairs during the course of his search of Millstone. Cunigan's redacted statement, however, does not address the basement apartment.[3] With-

---

**2.** The recognition of corroborative evidence as a factor in determining whether probable cause exists should not be construed as making this factor an explicit component of the "totality-of-the-circumstances" test. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. The *Gates* court did not include this factor in the test itself. *Id.* Nonetheless, the *Gates* court relied heavily on the police's corroboration of the information provided by the informant. *See Leake,* 998 F.2d at 1363. Therefore, while corroborative evidence is not an explicit component of *Gates 's* "totality-of-

the-circumstances" test, it remains an important factor in making the probable cause determination. *Id.* at 1365.

**3.** Curiously, the magistrate never recommended redacting Cunigan's entire statement from the affidavit, even though it appears to be the fruit of an illegal search. *See Murray v. United States,* 487 U.S. 533, 536–37, 108 S.Ct. 2529, 2532–33, 101 L.Ed.2d 472 (1988); *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963). In his Report and Recom-

out any specific reference to the basement apartment, probable cause may not attach. *Whitney*, 633 F.2d at 907.

Therefore, after examining the totality of the circumstances surrounding this case, we believe that the magistrate's report, adopted by the district court, was correct in finding that no substantial basis existed for a finding of probable cause to search the basement apartment of Millstone. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Schmitt's statement did not implicate the basement apartment, where the inculpatory evidence was found. Thus, we affirm the magistrate's decision that the redacted affidavit failed to provide a substantial basis for a finding of probable cause to search the basement apartment of Millstone.

## C.

Although there was no substantial basis to issue a warrant for the basement floor of Millstone, the government contends that the warrant should extend to the basement apartment because "the living arrangements could not fairly be compared to separate apartments." Government's Br. at 18.[4] This argument is without merit.

■ The Fourth Amendment states that warrants must " 'particularly describ[e] the place to be searched' " if they are to be upheld. *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). A warrant survives review if " 'the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended.' " *Whitney*, 633 F.2d at 907 (*quoting Steele v. United States No. 1*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925)). In turn, the scope of the warrant hinges on the extent of the officers' knowledge of the premises, based on the information available at the time that they executed the warrant. *Garrison*, 480 U.S. at 87, 107 S.Ct. at 1018. Therefore, if the officers knew or should have known that Millstone was divided into separate residences, then they would be required to exclude the basement apartment from the scope of the warrant if they only had probable cause to search the upper floor. *Id.* at 86, 107 S.Ct. at 1017–18.

■ The warrant in question authorizes the search of Millstone and identifies it as "the residence of Ali [Shamaeizadeh], Teresa Schmidt [sic], Brian Reed, and Joe Ford." J.A. at 50. Thus, on its face, the warrant authorized the officers to search the entire house. *Id.* The officers, however, had actual notice that Millstone was divided into two apartments after they secured and when they executed the warrant. Officer Wiles testified that during the first warrantless search of Millstone, Schmitt told him that the basement apartment was a separate residence, and that he later told Chief Grant. J.A. at 333–34. Because the police were notified by Schmitt that Millstone was divided into two separate residences, the officers should have restricted their execution of the warrant to the upper floor of Millstone. *Garrison*, 480 U.S. at 86, 107 S.Ct. at 1017–18.

The officers also possessed constructive notice that Millstone was comprised of two separate residences because the living conditions at the time of the search indicate that Reed and Ford exercised exclusive control over the basement floor. The evidence presented indicates that the officers who executed the warrant should have known that the basement floor of Millstone was Reed and Ford's separate residence. *Garrison*, 480 U.S. at 87, 107 S.Ct. at 1018. The officers had previously discovered that the door connecting the upper floor and basement floor was locked. Furthermore, in his warrantless search of the basement apartment, Cunigan noticed that the apartment had its own den

---

mendation, the magistrate found that "the third warrantless search of the upstairs and downstairs portions of the residence, which was conducted by . . . Sergeant Cunigan, was constitutionally invalid." J.A. at 133. Consequently, the magistrate ordered that the "information obtained during [that search] must be excluded." *Id.* at 135. Consequently, Cunigan's statement should have been excluded because it originates from the third illegal search. Nevertheless, our

analysis remains the same because the redacted statement did not create probable cause to search the basement apartment.

4. We decline to address that part of the magistrate's probable cause findings regarding the upper floor of Millstone because they are not directly at issue on this appeal.

and refrigerator. Finally, Schmitt had informed the officers that her access to the basement apartment was restricted. These circumstances should have put the officers on notice that the basement apartment was a separate residence not covered under the warrant. *See Garrison*, 480 U.S. at 86, 107 S.Ct. at 1017–18. Thus, the magistrate was correct in excluding the basement apartment from the scope of the warrant.[5]

In concluding that Reed and Ford's basement apartment should be excluded from the scope of the Millstone warrant, we find it necessary to distinguish this finding from the finding which the court made in *Whitney*. In that case, the search warrant designated the building to be searched as one residence, when in fact it "was composed of two separate apartments." *Id.* at 907. Whitney occupied the upper floor apartment and his co-tenant, Williams, occupied the lower floor apartment. When police executed the warrant, they found heroin in Williams' apartment; thereafter, Whitney was charged with possession with intent to distribute the drugs under 21 U.S.C. § 841(a)(1). *Id.* at 904–05. Whitney argued that because the building was divided into two residences, the police lacked probable cause to search Williams' apartment. *Id.* at 907. The court disagreed, deeming the warrant sufficient to authorize a search of the entire building. The court found that the search of Williams' apartment was proper because "there [was] no evidence that the living arrangement was ever described as one involving two separate apartments." *Id.* at 908. Moreover, the court concluded that the living conditions did not put the police on constructive notice that the building contained more than one residence. *Id.* at 908. Finally, the court noted that the informant told the police that Whitney enjoyed full access to both apartments. For these reasons, the court rejected Whitney's probable cause argument.

The circumstances in this case are substantially different from those found in *Whitney*. The district court found that police officers knew that Millstone was comprised of two residences before they executed the warrant. Furthermore, the fact that the police knew of a locked door separating the upper floor and the basement floor and the existence of separate living quarters on each floor before the execution of the warrant constituted constructive notice that Millstone contained two residences. Finally, unlike the informant in *Whitney*, Schmitt informed the officers that Reed and Ford occupied the basement apartment as a separate residence. These distinctions compel us to reach a different conclusion than the one reached the by the *Whitney* court. Accordingly, we reject the government's attempt to extend the magistrate's probable cause findings to the basement apartment.

### D.

In conclusion, we find that the suppression of the evidence seized from Reed and Ford's basement apartment at Millstone was proper. The magistrate was correct in finding that the redacted affidavit did not provide a substantial basis for issuing a warrant to search the basement apartment. Moreover, the magistrate correctly recommended exclusion of the basement apartment from the scope of the warrant. For these reasons, we **AFFIRM** the district court's order adopting the magistrate's report and recommendation, thereby suppressing the evidence seized from the search of the basement apartment.

---

5. Further undermining the government's argument is the fact that Shamaeizadeh, who acted as Reed and Ford's landlord, was denied standing to participate in the suppression hearing because he had no reasonable expectation of privacy in the basement apartment where the inculpatory evidence was discovered. *See* note 1, *infra; see also Jones*, 362 U.S. at 261, 80 S.Ct. at 731. The finding that Shamaeizadeh had no reasonable expectation of privacy in the basement apartment suggests that the upper floor was the only part of Millstone in which Shamaeizadeh could claim such an interest. *Id.* Thus, Shamaeizadeh's lack of standing to file a motion to suppress militates towards a finding that Millstone was divided into two distinct residences.