RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 04a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LISA MILLS,

      *Plaintiff-Appellant,*

    *v.*

THE CITY OF BARBOURVILLE; THE BARBOURVILLE
POLICE DEPARTMENT; MICHAEL BROUGHTON, in his
individual and official capacities; JOHNNY SMITH, in his
individual and official capacities; KNOX COUNTY; THE
KNOX COUNTY JAIL; PRESTON SMITH, in his individual
and official capacities; RAY CAMPBELL, in his individual
and official capacities; SONJA WARREN, in her individual
and official capacities, and ANGEL MILLS-ROGERS, in
her individual and official capacities,

      *Defendants-Appellees.*

No. 02-6404

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 00-00095—Danny C. Reeves, District Judge.

Argued: April 22, 2004

Decided and Filed: November 12, 2004

Before: MERRITT and MOORE, Circuit Judges; DUGGAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Brenda Popplewell, Somerset, Kentucky, for Appellant. Bradford L. Breeding, FARMER, KELLEY, BROWN, WILLIAMS & BREEDING, London, Kentucky, Daniel G. Yeast, TRAVIS, PRUITT, LAWLESS, POWERS & YEAST, Somerset, Kentucky, for Appellees. **ON BRIEF:** Brenda Popplewell, Somerset, Kentucky, for Appellant. Bradford L. Breeding, FARMER, KELLEY, BROWN, WILLIAMS & BREEDING, London, Kentucky, Daniel G. Yeast, TRAVIS, PRUITT, LAWLESS, POWERS & YEAST, Somerset, Kentucky, for Appellees.

---

[*] The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

MERRITT, J., delivered the opinion of the court, in which DUGGAN, D. J., joined. MOORE, J. (p. 12), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

MERRITT, Circuit Judge. In this factually complicated case, plaintiff Lisa Mills was arrested and had her home searched in Knox County, Kentucky, incident to a charge of selling a marijuana cigarette to a teenager. The police apparently concluded that there was insufficient evidence to prosecute the case and the charge against her was later dropped. After her arrest, plaintiff was searched for contraband at the Knox County Jail. Although the search was conducted by female jailers, she alleges that at one point during the search a male jailer passed by and saw her bare breasts during the search. She brought suit pursuant to 42 U.S.C. § 1983 against various officials,[1] in both their individual and official capacities, connected with the City of Barbourville, the Barbourville Police Department, Knox County and the Knox County Jail, claiming that her constitutional rights were violated when (1) the police searched her residence and arrested her pursuant to a defective warrant obtained through a faulty affidavit and (2) a male jailer saw her bare chest during the search at the jail after her arrest.

Plaintiff moved for summary judgment, and defendants made cross-motions for summary judgment. Before judgment was entered, plaintiff moved to dismiss a number of the defendants.[2] The motion was granted and these defendants were dismissed with prejudice. The district court awarded summary judgment to the remaining defendants and plaintiff moved to alter or amend the judgment. That motion was denied and plaintiff timely appealed. On appeal, plaintiff named Knox County Jailer Preston Smith as a party, despite the fact that he was dismissed below with prejudice as a result of plaintiff's own motion. Plaintiff also names several entities as parties to her appeal that were not named parties to the proceeding below: the City of Barbourville, the Barbourville Police Department, Knox County, and the Knox County Jail. We presume that naming these governmental entities as parties on appeal arises because plaintiff sued the city and county officials in their official capacities.

For the reasons set forth below, we reverse summary judgment for defendants Officer Michael Broughton and Police Chief Johnny Smith of the Barbourville Police Department because the search warrant used in this case does not establish any link between the place to be searched and any criminal activity and hence lacks probable cause. We agree with the district court that the facts in the record do not create a dispute of material fact giving rise to a constitutional violation regarding the search at the jail.

---

[1] Plaintiff originally sued many public officials in Knox County, in both their official and individual capacities, including the officer who arrested her, the police chief, four other officers who were on the scene, the mayor of Barbourville, six City Council members, the Knox County Jailer, the Knox County Judge Executive, two deputy jailers at the Knox County jail, another employee of the Knox County jail, five members of the Barbourville Public Housing Authority and its Executive Director. Of the parties named below, all but Officer Michael Broughton and Police Chief Johnny Smith of the Barbourville Police Department and Knox County Jailers Ray Campbell, Sonja Warren and Angel Mills-Rogers were dismissed below. On appeal, plaintiff named Knox County, the Knox County Jail, The City of Barbourville and the Barbourville Police Department as parties, despite the fact that these government entities were not specifically named as defendants in the complaint.

[2] Barbourville Police Officers Robert Brown, Sherman Lawson, Pat Alfred and Randy Clark; Barbourville Mayor Jim Thompson; the six city council members; Knox County Judge Executive Gerald West; Knox County Jailer Preston Smith, and Executive Director of the Housing Authority Loretta Grey. In addition, plaintiff reached a settlement with the commissioners of the Public Housing Authority.

## I.

### A.  Facts Pertaining to the Search of Mills' Home and Her Subsequent Arrest

Plaintiff's first § 1983 claim pertains to the allegedly faulty warrants that resulted in the search of her home and her arrest in violation of the Fourth Amendment.  The parties relating to this claim are the City of Barbourville, the Barbourville Police Department, Officer Michael Broughton and Police Chief Johnny Smith, although only the two officers were named, in both their individual and official capacities, in the complaint.

On March 1, 1999, a security officer at Knox Central High School informed the Barbourville City Police Department that three of its students, Leo Cox, Mike Reynolds, and Clayton Moore, had skipped school and smoked marijuana.  The three students were taken to the police station and questioned after being read their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

According to separate statements signed by the boys, they collectively formed the intent to purchase a marijuana cigarette.  Cox told the other two that he knew where to get one.  He took five dollars from Moore, and told Moore and Reynolds to wait by a fence near Union College.  Moore and Reynolds stated that Cox walked to the housing projects located on Minton Drive, and returned a few minutes later with the cigarette (specifically, one boy said five minutes later, the other said fifteen).  According to Cox's statement, he went to the "Housing projects located on North Allison Ave."  He knocked on a door and "a woman by the name of Lisa who has blonde hair open[ed] the door" and told him to come in.  Cox asked her if she had a "joint" to sell and she said yes and went upstairs, returning a few minutes later with a marijuana cigarette.  Cox paid her five dollars for the cigarette and left.  Statement of Leo Cox, dated Mar. 1, 1999, J.A. at 280-81.[3]

Officer Michael Broughton of the Barbourville Police Department, a defendant, prepared the statements of Cox and Moore, and Officer Robert Brown, who was dismissed as a defendant and whose dismissal was not appealed, prepared Reynolds' statement. Officer Broughton claims that after taking the statements, he and defendant Police Chief  Johnny Smith drove to the housing project with Cox, and Cox pointed out plaintiff's residence on North Allison Avenue.  M. Broughton Dep. at 127, J.A. at 512.  They then returned to the station, where Officer Broughton prepared an affidavit for the search of plaintiff's home and one for an arrest warrant.  He then met with Judge John Knox Mills (no relation to plaintiff), who signed the warrants.

That afternoon, Officer Broughton and Chief Smith executed the warrants at plaintiff's home.  Other officers were present, but Broughton and Smith conducted the search.  They allegedly "ransacked" her home, damaging some of her personal property in the process.  They found no drugs in the search, but did find what they termed "drug paraphernalia:" rolling papers and plastic baggies.  According to plaintiff, the baggies were in her son's closet (she claims they were for her son's baseball and basketball cards), while the rolling papers were found on her dresser (she claims they belonged to her deceased father, who used to smoke homemade tobacco cigarettes).  They arrested plaintiff and took her to the Knox County Jail.  The allegations giving rise to the separate § 1983 claim concerning the conduct of the jailers will be recited below.

On March 16, 1999, Officer Broughton brought Leo Cox back in for another interview.  Broughton claims he reinterviewed Cox of his own initiative "in case I missed something."  M. Broughton Dep. at 70-73, J.A. at J.A. at 498-501.  According to Officer Broughton and Officer Brown, who was also present, Cox began to cry and told them he had received a death threat that Cox believed related to his statement against plaintiff.  *Id.* at 73, J.A. at 501.  Officer Broughton then prepared another statement that Cox signed saying

---

**3**References to the Joint Appendix submitted in this case will be cited as "J.A. at ___."

that Cox had "lied about buying the marijuana from Lisa Mills," that he never bought any marijuana from her or went to her apartment, and that he "made . . . up" the allegations in the statement he had signed on March 1. Statement of Leo Cox, dated Mar. 16, 1999, J.A. at 284.

After Cox recanted his statement, the course of the investigation and prosecution against plaintiff is unclear from the record before us. While a dispute exists as to whether plaintiff's criminal case was ever presented to the grand jury, it is clear that no criminal charges arising out of the sale of the marijuana were pursued against plaintiff.

Two years later, in May 2001, plaintiff obtained an unsworn written statement by Cox and witnessed by his mother, elaborating on his earlier recantation from March 16, 1999. Statement of Leo Cox, dated May 10, 2001, J.A. at 288-89. In the 2001 statement, Cox claims he bought the drugs from a friend named A.G. Mills (again, no relation to plaintiff) who lived in the same housing project as plaintiff. He also claimed that false statements about plaintiff were "pushed upon" him during questioning by Officer Broughton. *Id.* He says he was asked during his initial questioning if the last name of the person he brought the drugs from was "Mills." He said he did not know A.G.'s last name at the time but "thought it would be harmless to agree. I mean, he was giving me an escape route." Cox went on to state that "to this day I don't know where [Lisa Mills] lived" and that he "still [didn't] know what Lisa looked like." *Id.*

Subsequent events have not clarified the situation. Three months after plaintiff's arrest, an A.G. Mills was arrested for selling drugs. The police recovered drugs from his apartment, which plaintiff claims is directly on the other side of the fence from where Reynolds and Moore waited for Cox, while her apartment was not within sight from the place where the two boys waited for Cox. The person who could shed much-needed light on the situation, Leo Cox, was not deposed for this lawsuit and plaintiff's counsel has stated her inability to find him.

## B. Facts Pertaining to the Search of Plaintiff at the Knox County Jail

Plaintiff also claims that her constitutional rights were violated when a male deputy jailer saw her bare breasts during a search at the jail. Plaintiff brings her claim against Knox County, the Knox County Jail, Knox County Jailer Johnny Smith, and jail employees Ray Campbell, Sonja Warren and Angel Mills-Rogers (no relation to plaintiff). Plaintiff was booked at the Knox County Jail at around 4:00 p.m. on March 1, 1999. Deputy Jailers Angel Mills-Rogers, who was newly hired and in training at the time, and Sonja Warren, the jail cook and long-time employee who occasionally helped with other tasks, took plaintiff into a shower area or room to search her for contraband. Plaintiff alleges, though the point is disputed, that there was no door to the room. For purposes of review, we will view the facts in the light most favorable to plaintiff and assume that there was no door to the shower area. Although the parties disagree as to whether to call the search a "strip-search," at one point the jailers instructed plaintiff to raise her shirt and pull her bra up and out from her body so that any contraband hidden in her bra would fall out. Plaintiff was not forced to remove her pants or to take her shirt or bra completely off. The jailers claim that although they do not search everyone taken into custody in this manner, it is routine for an inmate arrested on a drug charge in order to search for contraband.

Plaintiff alleges that while she was standing with her shirt and bra up and bare chest exposed, male jailer Ray Campbell walked by the room. She claims that he saw her exposed chest and stopped and "stared" before continuing down the hall. She says that he did not turn his body or shoulders toward her or say anything, and she cannot remember the expression on his face, but she claims that he did not move on or immediately look away from and "stared" at her. Lisa Mills Dep. at 70-72, J.A at 555-57. She did not say anything to him, to the women jailers searching her, or to anyone else at the jail about the incident at the time, but claims that she burst into tears, was distraught, and suffered mental injury from the experience.

Campbell denies being at the jail at that time. Some jail records, including pay records, indicate that his shift ended at 3:00 p.m. that day. However, at some point he signed an incident report regarding plaintiff dated March 1, 1999, and plaintiff's uncle claims that Campbell was one of the jailers who escorted her back to the clerk's office after the search. For purposes of review, we will view the facts in the light most favorable to plaintiff and assume that Campbell was present at the jail that afternoon and saw plaintiff's bare breasts during the course of the search.

## II.

In order to prevail on a Section 1983 claim, a plaintiff must establish the violation of a constitutional right by a person acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). State officials are protected by qualified immunity that shields them from civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

## A.  Discussion of the Barbourville Claims

We must determine whether plaintiff's Fourth Amendment rights were violated as a result of the search of 801 North Allison Avenue. Plaintiff challenges both the underlying validity, as well as the sufficiency, of the allegations in the affidavit underlying the search warrant. She contends that the affidavit was not supported by probable cause and, further, that a reasonable officer in Officer Broughton's or Chief Smith's position would have known there was not probable cause for issuance of the warrant, rendering the application for and execution of the warrant a violation of a clearly established right. Specifically, plaintiff asserts that there was no probable cause for the warrant because (1) the affidavit supporting the warrant was either deliberately false or made with "reckless disregard" for the truth and (2) the affidavit was insufficient because it failed to connect the place to be searched with any criminal activity and police failed to corroborate allegations made by Leo Cox in his statement, which served as the basis for the affidavit and warrant, or to ensure his reliability as a witness. Also, though not named as parties below, on appeal plaintiff makes a § 1983 claim against the City of Barbourville and its police department.

The district court found that the affidavit provided probable cause to issue a warrant for the search of plaintiff's home and that, even absent probable cause, defendants Broughton and Smith were entitled to qualified immunity because they reasonably believed the warrants were supported by probable cause. We reverse and remand because the affidavit supporting the search warrant for plaintiff's home was not supported by probable cause and a reasonable officer in Officer Broughton's and Chief Smith's positions should have known that there was not probable cause to conduct the search.

### 1.  Officer Broughton and Police Chief Smith

The Fourth Amendment states that "the right of the people to be secure in their . . . houses . . . against unreasonable searches . . . shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. In order to secure the right of privacy to people in their homes, the home may not be invaded by the government unless the search warrant establishes a relationship or link between the home and criminal activities. This is one of the reasons general searches are forbidden and only searches limited to a particularly-described place are allowed. The warrant, or the attached affidavit, must establish the link so that there is probable cause to believe that the instrumentalities of criminal activity will be found there. In the present case, the warrant does not establish that link.

The affidavit supporting the search warrant issued for 801 North Allison Avenue contained only the following statements in support of probable cause to search the location:

[A]ffiant received information from . . .:  A MALE JUVENILE THAT LISA MILLS HAD SOLD THE MALE JUVENILE A MARIJUANA CIGARETTE FOR FIVE (5) DOLLARS.

[A]ffiant conducted the following independent investigation:  ON THE 1ST DAY OF MARCH A MALE JUVENILE GAVE A SIGNED WRITTEN STATEMENT TO OFFICER BROUGHTON STATING THAT HE HAD PURCHASED A MARIJUANA CIGARETTE FOR FIVE (5) DOLLARS FROM LISA MILLS.

J.A. at 117-19. The unsworn statement of the male juvenile (Leo Cox) referred to in the affidavit was not attached to it.[4] Nothing is stated about why 801 North Allison is being searched.

To determine whether probable cause exists to search a particular place, the magistrate asks whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001)(quoting *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996)).  "Probable cause" is generally defined as a sufficient quantum of evidence to convince a reasonable person that a crime has been committed and that fruits of the crime are likely to be present.  Black's Law Dictionary 1219 (7th ed. 1999).  We must therefore assess whether the state judicial officer had a substantial basis for finding that the affidavit presented to support the warrant established probable cause to believe that the evidence would be found at the place cited.  *See United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992).  In evaluating the issuing magistrate's probable cause determination, we apply a flexible "totality of the circumstances" approach, which permits us to evaluate the particular facts of each case.  *Gates*, 462 U.S. at 238.  Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.  *Id.*

Our review of whether this affidavit provides probable cause to search plaintiff's home must begin with the fact that the affidavit did not mention that Cox had purchased the marijuana at that location.  The underlying affidavit neither connects the searched residence to any illegal activity nor states that a person engaging in illegal activity away from the residence lives at the searched residence.  The affidavit contains no statement or other evidence that the male juvenile (Leo Cox) actually observed contraband on the premises of the place to be searched, no statement or evidence that plaintiff Lisa Mills, the person named in the affidavit as the one from whom Cox purchased the marijuana cigarette, lives at 801 North Allison Avenue, nor any other statement or evidence that ties plaintiff to the place to be searched.  The affidavit does not indicate that Officer Broughton or Chief Smith performed any investigation to determine whether plaintiff lived at 801 North Allison Avenue.  Although the officers claim that they took Cox in a car and he identified 801 North Allison Avenue as the residence from where he purchased the drugs, there is no indication that this knowledge was passed on to the magistrate.  The officers' independent knowledge, without some explanation in the affidavit, is insufficient to allow the magistrate to find probable cause that drugs would be found at 801 North Allison Avenue.  Simply put, the affidavit does not provide the required nexus between the place to be searched and  Lisa Mills.  *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(en banc); *United States v. Helton*, 314 F.3d 812 (6th Cir.2003); *United States v. Van Shutters*, 163 F.3d 331, 337 n.4 (6th Cir.1998) (noting that verification that defendant actually lived at the searched residence "should have been included in the affidavit").

The district court found that qualified immunity shielded the named defendants from any liability for the searches. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does

---

[4] While the police officers who prepared the affidavit were aware of the identity of the "male juvenile," they omitted the information from the affidavit to protect the juvenile's identity in accordance with department policy.

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity applies to an official's actions is a question of law that we reviews *de novo. See Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir.1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Plaintiff's Fourth Amendment right was violated by the deficient affidavit supporting the warrant. Although officers are entitled to rely on a judicially-secured warrant for immunity in a Section 1983 action claiming illegal search, if the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable, qualified immunity is not appropriate. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *Ruby v. Horner*, No. 01-4003, 2002 WL 1396907, \*\*3 (6th Cir. June 26, 2002); *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999). In *Malley*, the plaintiffs alleged that a police officer caused them to be arrested unconstitutionally by presenting to a judge a complaint and supporting affidavit that failed to establish probable cause. *Malley*, 475 U.S. at 337. The Supreme Court rejected an argument that a police officer who had been sued for making an allegedly unconstitutional arrest should be conclusively deemed entitled to immunity as long as an independent magistrate had issued a warrant for the arrest. The Court subscribed to an "objective reasonableness" test: "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . the shield of immunity [will] be lost." *Id.* at 344-45(citation omitted).

Under an "objective reasonableness" test, the officers "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341. The proper inquiry, therefore, is whether a reasonably competent investigator armed with Officer Broughton and Chief Smith's knowledge and experience could have believed that probable cause existed to search 801 North Allison Avenue. Because the officers presented absolutely no information in the affidavit presented to the magistrate indicating that the place to be searched was connected to Lisa Mills, either through a sworn statement that Cox had identified the residence as the place of the drug purchase or through independent investigation corroborating that it was the home of Lisa Mills, the affidavit was "so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable."

### 2.  Claim Against the City of Barbourville and the Barbourvile Police Department

We first note that neither the City of Barbourville nor the Barbourville Police Department were named in the complaint below. Plaintiff did sue Officer Broughton and Chief Smith in their official capacities, however, and we will presume that plaintiff is simply recasting her claim against the two police officers in their official capacities as claims against the governmental entities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Generally, a governmental entity cannot "be held liable solely because it employs a tortfeasor," *id., i.e.,* under a *respondeat superior* theory. Governmental entities may be liable under section 1983 only for their formal official acts and policies, and also, under some circumstances, for practices "so permanent and well settled" as to constitute established custom. *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). In *Monell*, the Supreme Court held that municipalities may be sued for damages under § 1983 when the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Id.* at 690. A governmental entity will not, however, be held vicariously liable under § 1983 for the random, unauthorized acts of its employees. *Id.* at 691.

To succeed under this theory, therefore, plaintiff was required to show that the unlawful search resulted from an official policy or practice of the City or Police Department. Plaintiff attempts to make out a "failure to train" argument by contending that the City of Barbourville and the Barbourville Police Department are responsible for the allegedly unconstitutional searches because the defendants claimed that

the amount of evidence gathered in support of these warrants was typical of their practices. She argues that if the officers believe this amount of evidence is sufficient, their training and the policies of the department must be deficient. However, plaintiff acknowledged that the officers receive their initial training at one of the best law enforcement schools in the nation, Trans. of Pretrial Conf. at 32 & 34, J.A. at 425-26; that they receive at least some follow-up training on probable cause, *id.*; her own expert, Dr. Terry Cox, has no concerns with the training of the Barbourville officers on probable cause, *id.* at 53, J.A. at 428; and she has no evidence that the city or department were ever put on notice that more training was needed. *Id.* at 41, J.A. at. 427. In sum, to the extent we may entertain plaintiff's "failure to train" claim against the City of Barbourville and its police department at all, the claim is without merit.

## B.  Discussion of the Knox County Jail Claims

### 1.  Defendants Warren, Rogers and Campbell

Plaintiff's Section 1983 claim against several of the Knox County jailers arises from the claim that defendant Ray Campbell's viewing of her bare breasts amounted to an unreasonable search. The district court  granted summary judgment to defendants on the ground of qualified immunity.

In *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), the Supreme Court held that routine strip searching of pretrial detainees was not a *per se* violation of the Fourth Amendment prohibition against unreasonable searches and seizures. In articulating the balancing test applicable to such searches, the Court stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it occurred.

*Id*. at 559.

Plaintiff had been arrested on a drug charge and she concedes it was reasonable to search her for contraband under the circumstances. Plaintiff's claim appears to go to the location where she was searched, a shower area or room without a door, which she argues did not provide sufficient privacy to keep others, particularly members of the opposite gender, from seeing her. Plaintiff argues that she should not have been searched "in an open area and in front of Mr. Campbell." Trans. of Pretrial Conf. 73, J.A. at 442; L. Mills Dep. at 27-28, J.A. at 543-44. We will assume for purposes of this review that the shower area did not have a door, as plaintiff alleges.

While *Bell* did not involve searches by members of the opposite sex, its holding is instructive here. For security reasons, jails do not have many places that provide complete privacy from others, particularly from jail employees. As the Supreme Court has pointed out,  a "detention facility is a unique place fraught with serious security dangers." *Bell*, 441 at 558. Plaintiff has not offered any evidence that there was a more private location in the jail that would have been a more appropriate place to search a detainee.

As to jail employees of the opposite gender viewing prison inmates or detainees, we have recognized that a prison policy forcing prisoners to be searched by members of the opposite sex or to be exposed to regular surveillance by officers of the opposite sex while naked – for example while in the shower or using a toilet in a cell -- would provide the basis of a claim on which relief could be granted. *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987); *Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992). *Kent* involved prison policies that subjected inmates to *routine* searches or viewing by guards of the opposite sex. In this case, the female jailers took plaintiff to a separate room where two female officers searched her. Plaintiff offers no proof that it was standard policy for inmates to be searched in such a manner that guards of the opposite sex or other persons would routinely view them. Instead, the evidence indicates that Warren and Rogers followed routine procedures to secure her privacy.

No evidence exists in the record suggesting that either Warren or Rogers knowingly violated plaintiff's constitutional right under the Fourth Amendment to be free from unreasonable searches or that they were plainly incompetent as to their constitutional obligation to conduct a reasonable search. Plaintiff concedes not only that she has no evidence that they conspired with Campbell for him to have an opportunity to see plaintiff during the search, she also concedes that they were just doing their jobs and did nothing to harm her. L. Mills Dep. at 74-75, J.A. at 558-59. The fact that Campbell may have seen her accidently as he was walking by cannot be a constitutional violation in the absence of any evidence that either the normal search policy was unconstitutional or that it was carried out in an unconstitutional manner. Because no constitutional violation occurred, defendants Warren and Rogers are entitled to qualified immunity.

What remains is a claim that Campbell intentionally sought out plaintiff during her search in order to invade her privacy. If plaintiff can demonstrate that Campbell planned or intended to see her during the search, he would not be entitled to qualified immunity. However, plaintiff offers insufficient evidence that Campbell's walking past the shower area during the search was anything other than an accidental encounter.

Plaintiff's evidence that Campbell did not accidently come upon her during the search but instead intentionally came to look at her consists of: (1) a claim that his position as deputy jailer makes it likely that he knows who is in the jail and where at any time; (2) the fact that he "stared" at her rather than looking immediately away; and (3) allegations that Campbell had on other occasions behaved inappropriately towards women in the jail.

Plaintiff's proof of intent is that Campbell "stared" at her. Plaintiff does not allege that Campbell said anything to her or smiled or made any other facial expression. She says that he did not even turn his shoulders toward her to face her. His appearance was so brief that the two women jailers searching plaintiff did not see him. While we agree that it would have been more appropriate for him to look away immediately, that fact alone does not make the search unconstitutional under the Fourth Amendment.

As to plaintiff's evidence that Campbell had on other occasions behaved inappropriately towards women in the jail, she offers the example of when she was arrested on a separate occasion, she alleges that Campbell asked her "What is a good-looking lady like you doing in a place like this?" L. Mills Dep. at 23, J.A. at 563. Plaintiff also presents the testimony of a former deputy jailer, Lucy Biemslager, who testified that on previous occasions Campbell had made inappropriate comments to women inmates such as "you're pretty" and had previously entered into the cells of women inmates at unjustified times. Pl. Brief 25. Biemslager acknowledged that the behavior she witnessed occurred before Campbell became Knox County Jailer, a position he has held since 1993, and she could not offer any examples of his having ever viewed a woman being searched.

Biemslager's deposition is not in the Joint Appendix nor in the record so far as we can determine. We have instead cited to the reference to it in plaintiff's brief. Because the deposition was taken shortly before the Pretrial Conference, it was not submitted to the court below in a timely manner, and it is not clear if the trial judge allowed it into the record. Based on the state of the record before us, we cannot overrule the district court and make an inference that Campbell intended to invade plaintiff's privacy based on Biemslager's deposition. There is not enough evidence in the record before us to create a dispute of material fact as to Campbell's intent. We therefore affirm the conclusion of the district court that Campbell is entitled to qualified immunity.

**2. Claim against the Knox County Jail and Preston Smith, Knox County Jailer**

Although these three parties are named in the Notice of Appeal, Smith is no longer a party to this suit, having been dismissed below pursuant to plaintiff's own motion. Knox County and the Knox County Jail were not named in the complaint, and, as with the Barbourville governmental defendants, we presume

that plaintiff is simply recasting her claim against the jailers in their official capacities as claims against the governmental entities.

Plaintiff's "failure to train" claim against the county, the jail and its head jailer is without merit for the same reasons we found no merit to her similar claim against the City of Barbourville and the Barbourville Police Department. *See supra* pp. 17-18. Plaintiff's claim against defendant Smith is based upon a *respondeat superior* theory of liability, which cannot provide the basis for liability in § 1983 actions due to the supervisory position of the defendant over the actor. *Monell*, 436 U.S. at 691. In order to establish liability pursuant to § 1983, the plaintiff must prove that the defendant, as a supervisory official, is *personally* responsible for the alleged unconstitutional actions that caused his injury. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984). At a minimum, the plaintiff must demonstrate that a supervisory official condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *Id*. Plaintiff fails to allege any facts that show Smith encouraged or condoned the alleged unconstitutional conduct of defendants Rogers, Warren or Campbell, or that Smith authorized, approved or knowingly acquiesced in the conduct. Because the only support for the "failure to train" theory is the assertion that the county and the jail failed to correct Campbell's alleged past inappropriate conduct towards female prisoners and that the conduct was "acquiesced to by his superiors," the claim must fail.

### III.  Malicious Prosecution

In her brief on appeal, plaintiff also objects to the dismissal of her malicious prosecution claim. The malicious prosecution claim is a state law claim over which the district court had jurisdiction through its supplemental jurisdiction. 28 U.S.C. § 1367.[5] The district court dismissed plaintiff's state law claims for lack of subject matter jurisdiction once it had disposed of her federal claims on summary judgment. Given our reinstatement of one of plaintiff's federal claims under Section 1983, we reverse the dismissal of the state law claims for lack of jurisdiction and remand to the district court for its determination of whether the exercise of supplemental jurisdiction over the state law claims is appropriate under 28 U.S.C. § 1367. *See Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 332 (6th Cir. 2001).

### IV.  Bill of Costs

Plaintiff appeals the district court's denial of her objection to the defendants' bill of costs. Although the district court did not address the bill of costs specifically, the rule states that "costs other than attorney's fees shall be allowed as of course to the prevailing party. . . ." Fed. R. Civ. Pro. 54(d)(1). In light of our reversal of the district court for lack of probable cause to support the search warrant, defendants cannot be

---

[5]28 U.S.C. § 1367, Supplemental Jurisdiction, states in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

   (1) the claim raises a novel or complex issue of State law,

   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

   (3) the district court has dismissed all claims over which it has original jurisdiction, or

   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. . . .

considered a "prevailing party" under Rule 54 and are therefore not entitled to costs. The plaintiff has prevailed in part and the defendants in part. Accordingly, each party shall bear its own costs.

We also note the highly inappropriate statement by the police department in its brief supporting the award of costs to it that "Mills is able to work. There is absolutely no reason why she should not work. If in fact Mills is poor, it is of her own choosing." Barbourville Police Department Brief at 38. The police department has no way of knowing whether plaintiff can work and it has no basis for making such a comment. Ad hominem attacks on parties have no place in a judicial proceeding.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part and remanded to the district court.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. Because I believe Lisa Mills ("Mills") has established material questions of fact with respect to her claim against Ray Campbell ("Campbell") for the invasion of her right to bodily privacy, I would reverse the district court's grant of summary judgment and remand this claim for trial. According to Mills, Campbell stood in an open doorway and "look[ed] at [her] for as long as [the search took]." J.A. at 543 (Dep. of Lisa Mills). Mills also testified that Campbell "stopped and stared" at her. J.A. at 556. Whether or not Campbell came across Mills accidentally, Mills's testimony that Campbell watched her for the duration of the search, and that he stopped and stared at her rather than averting his eyes, raises in my view a factual issue as to whether his behavior was the sort of invasion of bodily privacy that would violate the Fourth or the Fourteenth Amendment. I therefore respectfully dissent with respect to this claim; I concur in the majority's opinion regarding the other claims.